No. 15,031.

Gallagher Transfer & Storage Company *v.* Public Service Company of Colorado.

(138 P. [2d] 926)

Decided May 24, 1943.   Rehearing denied June 21, 1943.

Messrs. Bartels, Blood & Bancroft, Mr. Arthur H. Laws, for plaintiff in error.

Messrs. Lee, Shaw & McCreery, Mr. William A. Bryans, III, for defendant in error.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

An action for damages by defendant in error against plaintiff in error, resulting from the latter's negligence, as it is alleged, and involving responsibility of contractors, general and special.

A packing house concern, doing business in Denver, found it expedient in the course of its affairs to construct a sewage disposal plant. In connection therewith it became necessary to excavate a ditch or trench, some two hundred feet in length and ten or twelve feet in depth. It indicated to others the location, length and depth of the ditch or trench; thereafter had no part in its construction, and is not a party to this action or interested in the result. A Denver plumbing company, through a subcontract, was employed to make the ditch excavation. In the course of this employment, the sub-

contractor, not having necessary equipment, proceeding under conditions to appear, hired a mechanical shovel with an operator from plaintiff in error, owner of the equipment and general employer of the operator. During the course of, and incidental to, the excavation of the ditch, and by reason of the operation of the mechanical shovel by such operator, some electrical wires of high voltage were damaged, and, as a proximate cause, other wires and transformers, all being property of defendant in error, also were damaged.

Trial was to the court, and, premised on findings that in performing the service appearing the operator of the shovel was the employee of plaintiff in error, and that in operating the shovel he was guilty of negligence, judgment was given against plaintiff in error.

Other than formal ones, the essential allegations of the complaint as set out in the abstract of record read: "That * * * the defendant was engaged in the excavation of a sewer ditch or trench in close proximity to the * * * main transmission and distribution lines of the plaintiff; that in the excavation of said ditch the defendant, by its agents and servants, was operating and using a mechanical shovel, and that it so carelessly and negligently operated the same that the boom of said shovel was carelessly and negligently swung into and against the said transmission and distribution line of the plaintiff, whereby three phases of said line came together and caused a short circuit upon said line." There was answer of denial.

Several witnesses testified on behalf of defendant in error, in its efforts to prove the two phases of its case: the liability of plaintiff in error, as a contractor, and the negligence of its employee, one Jack Lawson, the operator of the shovel. Witness Harry W. Hammond testified that he was the general contractor, and had sublet the ditch contract to the plumbing company; that he had known Lawson for several years; that plaintiff in error had been on the ditch job between three and six

days prior to the accident; that seeing the boom on the mechanical shovel was getting pretty close to the high tension wires, he warned Lawson that "there had been a man killed before that on another job coming in contact with high tension wires." The other witnesses, with one exception to be noted, testified as to the amount of damage, and as to conditions relating to the employment of plaintiff in error.

Courts and litigants, both anxious to resolve presented issues fairly, as is true here, are sometimes deprived of what might be all-important testimony. The operator of the shovel was unavailable as a witness at the trial. Because of the lack of opportunity of counsel to examine and cross-examine him, the conclusion of the trial court as to his negligence was in the realm of conjecture, and understandably not wholly satisfactory. Upon this point the finding of the court was: "The evidence as to negligence of the operator Lawson is somewhat meager, but sufficient in my judgment to justify a finding that the operator was negligent in the operation of the machine."

The witness Hammond, as above noted, testified that when he saw the boom going up pretty close to the high tension wires, he warned Lawson about them, because, on another job, presumably of similar nature, a man had been killed by coming in contact with such wires. The only other evidence bearing upon this conclusive point is a statement read into the record by stipulation, "that the witness Oscar Larson, * * * if present would testify: 'I was employed as a drain layer by the Denver Plumbing and Heating Company. I am fifty-one years of age. While standing near the clam shell operated by Mr. J. S. Lawson, of the Gallagher Transfer and Storage Company, I observed the bucket in the clam shell grab a piece of angle iron in the sewer ditch being dug between the Swift and Company plant and the South Platte River. The bucket held to the piece of angle iron and swung up in the air, and the top of the boom

stopped about a foot or ten inches under the middle wire of three electric light wires over the ditch, forming an arc and making a bright flash, and the wire apparently was not damaged by the arc being formed. No one was injured.' "

This evidence of the witness Larson, the one eye-witness stands wholly uncontradicted. It was admitted by stipulation, was brief and factual and does not admit of misunderstanding. It unmistakably follows that rather than supporting the allegation that the "boom of said shovel was carelessly and negligently swung into and against" the high tension wires, it establishes the fact that the shovel was never closer to the wires than ten inches. "Facts constituting negligence must be proven." *John Thompson Grocery Co. v. Phillips,* 22 Colo. App. 428, 438, 125 Pac. 563.

The shovel operator, Lawson, as we have seen, was warned by Hammond, who, seeing that the boom of the machine was getting close to the wires, remarked that he must be careful, as a man had been killed before that on another job by coming in contact with high tension wires. Every man is presumed to look to his own safety. There is no reason to suppose that an experienced mechanical shovel operator, particularly, after being warned, would experiment by seeing how near he could place the boom of a shovel to high tension electrical wires without actual contact. As stated, he had been warned of the result of such a contact. He was not an electrician, and the only logical conclusion, that in fairness, can be reached, is that Lawson, being required to dig a ditch ten or twelve feet deep in close proximity to high tension wires, with his own safety in mind, was exercising due care. The shovel had to be raised as well as lowered, and, having due regard for his own safety, Lawson naturally would avoid bringing the boom of the shovel in contact with the wires. Negligence was not established.

The facts here are distinguishable from those in

*Straight v. Western Light & Power Co.,* 73 Colo. 188, 214 Pac. 397. There the plaintiff was injured by coming in contact with electric wires when he was working on a roof near them after having knowledge of their presence, and where a companion workman had been a victim of the same wires earlier in the day. The trial court held he was barred from recovery because of contributory negligence, and directed a verdict for defendant. In an opinion by Mr. Justice Burke, we affirmed the judgment.

██ Did the trial court in the instant case further err in making a finding that plaintiff in error, and not the plumbing company, or any company, was the employer of the operator, Lawson? In the matter of the alleged negligence considered above, the problem was to discover the facts and apply to them the known law. Here, the facts are clear enough, and not vitally disputed. The plumbing company, without equipment beyond hand tools, made an oral agreement with plaintiff in error to hire its mechanical shovel, together with an operator, for the purpose of digging a ditch or trench. The price agreed upon for the use of the shovel and operator was $7.00 per hour, or $50.00 per day. There was no length of time specified. The plumbing company could use the equipment and operator until the ditch was completed, or dispense with them at any time. Plaintiff in error did no supervising of the job, nor did the plumbing company, so far as appears. It was such work as required no supervision. The packing company laid out the course of the ditch and Lawson proceeded with the excavation. It was a routine job. The plumbing company's manager testified that he gave no orders to Lawson, either when to work or when to cease working; when to go to lunch or when to return from lunch; that he could neither hire nor fire Lawson; that his company carried no insurance on the equipment, nor did it provide Lawson with Workmen's Compensation Insurance. On cross-examination under the statute, Ambrose

Gallagher, of plaintiff in error, testified that he instructed Lawson to go out and dig a trench for the plumbing company; that he gave him no instructions except to go out and do the work. His testimony is silent as to insurance and compensation for the machine and Lawson. This testimony from both sides does not settle the issue. While doubtless plaintiff in error could have discharged Lawson had he failed to perform, the plumbing company could have terminated the use of his services and shovel at will. The facts are that Lawson was a competent operator and there was no need for supervision. What the relative powers of the plumbing company and plaintiff in error may have been in relation to Lawson while on this job were never involved. Neither party gave him any detailed, explicit orders.

We think there is no merit to the claim that the plumbing company should be relieved on the ground that it carried no insurance on the machine or workmen's compensation protecting Lawson. If it had assumed that burden when it need not, that would not, in itself, make Lawson its employee. Lawson was not injured and we are not called upon to decide his rights had he been. It should be noted, in this regard, that the Workmen's Compensation Act recognizes that the services of an employee may be loaned to another without making the general employer an independent contractor. "One who has the status of general servant or employee may be lent or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues to be under the direction and control of his master or becomes subject to that of the person to whom he has been lent or hired." 35 Am. Jur., p. 455, §18.

In *Frerker v. Nicholson*, 41 Colo. 12, 92 Pac. 224, it appeared that an undertaking company hired a carriage

and driver from a livery stable to carry those attending a funeral to the cemetery and back to their residences. On returning, as the plaintiff was about to alight from the carriage, the driver suddenly started the horses and plaintiff was thrown to the ground, causing injuries for which an action was brought against the livery stable owner. It was held that the owner of the carriage, and not the hirer, was liable for the injuries sustained. In that case, speaking through Mr. Justice Campbell, we adopted the English terminology of a class of cases "commonly known as the carriage cases." A careful study of that case is convincing that we were guarded in expressing our views; that we were considering only "carriage cases." We said: "Counsel for appellant, who is the owner of the horses and carriage and whose servant was the driver, in support of the proposition that the hirer, and not the owner, is liable in the circumstances which this case presents, relies, among other cases, upon *Bush v. Steinman,* 1 Bos. & P. 404. This case was commented upon by the judges in *Laugher v. Pointer,* 5 B. & C. 579, and again in *Quarman v. Burnett,* 6 M. & W. 497. Therein it, and similar cases, where occupiers of lands or buildings were held responsible for acts of others than their servants done upon, or near, or with respect to, their property, were clearly distinguished from the cases like the present one, commonly known as the carriage cases. * * *. Another class of cases, like those where a railroad company is held not responsible for negligence in the operation of its engine when, at the time of the accident, its engineer and the crew by which it was operated were rented to, and under the control of, another, is very clearly distinguished by Taft, circuit judge, in *Bryne v. Kansas City, etc., R. R. Co.,* 61 Fed. 605 [9 C.C.A. 666, 24 L.R.A. 603]. The learned judge quotes with approval the following language of Lord Justice Bowen, in *Donovan v. Construction Syndicate,* 1 Q.B. 629 [1893]: 'The principal part of the argument for the plaintiff was founded on

what may be called the carriage cases'." In deciding that the owner of the horses, and not the undertaking company, was responsible, we quoted with approval a United States Supreme Court opinion, a "carriage case." *Little v. Hackett,* 116 U.S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652, and a Massachusetts case, *Driscoll v. Towle,* 181 Mass. 416, opinion by Holmes C.J., yet another so-called "carriage case." Thus, the Frerker-Nicholson case is not authority for cases removed from its doctrine. In that case we recognized another and distinct class of cases, as a railroad company not being responsible for the operation of its engine, when the engineer and crew operating it were under the control of another.

Plaintiff in error was not a subcontractor. In the Frerker-Nicholson case the livery stable keeper hired out his equipment for the purpose of carrying people from the place where funeral services were held to the cemetery and thence to their homes. He contracted to perform this task in the time required for it, at the expiration of which the contract ceased. Plaintiff in error here, upon the other hand, made no contract to do any specified amount of work or to do it within any certain time. The plumbing company was simply using plaintiff in error's equipment in the performance of a job of its own, with, if exercised or not, complete supervision. The plumbing company, under its oral agreement with plaintiff in error, could have kept the machine and operator for any length of time, short or long, until the ditch was partly finished, or completed. They were hired upon an hourly basis. The Bryne v. Kansas City case mentioned in the opinion in Frerker v. Nicholson, is directly in point here. In the Donovan v. Construction Syndicate case, also there cited, and from which Circuit Judge Taft quoted at considerable length, the facts vary but little from those here. A "crane and a man to work it were lent by the defendants to Jones & Co. for a consideration," to load a ship. The plaintiff there was injured by reason of the negligence of the

operator. It was held that, though the man in charge of the crane remained the general servant of the defendants, yet since they had parted with the power of controlling him in his work for a third party that engaged his attention, they were not liable for his negligence while so employed. "The key to the whole case," said the court, quoting from the opinion of Lindley, L.J., in *Donovan v. Construction Syndicate,* "is that Jones & Co. were loading the ship, and not the defendants. The crane was being used for Jones & Co.'s purposes, and not for those of the defendants, and the former must for that particular job, be considered as Wand's [the man in charge of the crane] masters." Bowen, L.J., arriving at the same conclusion, added: "In the present case the defendants parted for a time with control over the work of the man in charge of the crane, and their responsibility for his acts ceased for a time." In writing the opinion in the Frerker case, Mr. Justice Campbell was careful to base his reasoning on the "Carriage Cases." "The defendant, and not the hirer," said the learned jurist, "employed the driver, and defendant was the only one who had the power to discharge him or direct his movements." The facts here, as we conclude, do not bring the case within the doctrine of the Frerker case, but rather within the rule otherwise developed in the opinion there.

Let the judgment be reversed.

Mr. Justice Jackson concurs in the result.

Mr. Justice Bakke dissents.

Mr. Justice Bakke, dissenting.

I regret my inability to concur in the Court's opinion, and shall very briefly state my reasons. The opinion reverses the judgment on two grounds: 1. Lack of proof of negligence. 2. Lawson was not at the time of the accident an employee of the Gallagher Company.

1. I do not think the court has shown a distinction between the negligence alleged in this case and that in *Straight v. Western Light & Power Co.,* 73 Colo. 188, 214 Pac. 397, cited in the opinion. It strikes me that the statement in behalf of Lawson's non-negligence could with all propriety have been made in behalf of Straight in that case, and, yet, we held there that Straight was guilty of contributory negligence, as a matter of law. In both cases, the evidence shows that neither employee came in actual contact with the high voltage electric wires. What difference, pray, from the standpoint of negligence, is there between injury caused by "leakage" or "creepage" of the current as in the Straight case, and the "disruptive discharge" of the current occurring in the case at bar. In both cases, the men were warned of the danger, and, if anything, the warning in this case was stronger than that given in the Straight case, yet, Judge Burke says of the warning there: "No more impressive warning of a dangerous condition existing at that time in the vicinity of that structure could have been conveyed." (p. 191) So much for that.

2. We held in the recent case of *Mill v. Fort Collins,* 109 Colo. 579, 129 P. (2d) 108, that the City of Fort Collins, being the owner of an excavating machine which it rented with an operator for so much a job, was liable under circumstances strikingly similar to those in the case at bar. I dissented there, but since that case became the law on similar situations, I think we should uphold it for a longer time than a few months.

Ordinarily a few presumptions are indulged in favor of the trial court's findings on a factual situation; here, apparently, the presumptions and legal questions were all resolved against the judgment.