No. 15,391.

Landis et al., doing business as Grand View Tours Company v. McGowan et al.

(165 P. [2d] 180)

Decided January 7, 1946.

356

Messrs. Bannister, Bannister & Weller, for plaintiffs in error.

Mr. Thomas I. Purcell, Mr. Philip Hornbein, Mr. Theodore Epstein, Messrs. Strachan & Horn, Mr. J. A. Carruthers, Messrs. Wood, Shuteran, Robinson & Harrington, for defendants in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

This is an action to recover damages for personal injuries resulting from an automobile accident.

Norma I. Landis and Ray Landis, doing business as Grand View Tours Co., are plaintiffs in error, and we will hereinafter refer to them as the Landises. Lula P. McGowan, Irene Alloway, The Pikes Peak Automobile Company, a corporation, and James Finney, doing business as Finney Sightseeing Company, are defendants in error and will be designated as McGowan, Alloway, Pikes Peak Company, and Finney, respectively.

McGowan and Alloway filed complaints in identical language against Pikes Peak Company and the Landises, alleging injuries sustained by them while passengers being transported by the Pikes Peak Company and the

Landises from Colorado Springs to the summit of Pikes Peak. In each complaint there is an allegation that the automobile in which plaintiff was a passenger was operated in a negligent and reckless manner, and as a consequence thereof left the highway and tilted over, inflicting serious injuries, to her damage in the sum of $15,000.00. The actions were consolidated for trial without objection.

The Pikes Peak Company, in its answer, denied all negligence on its part, and in its several defenses alleged that the injuries of which plaintiffs complain were the sole and proximate result of the negligence of one James Finney, who was brought into the action by a third party complaint. In a cross claim against the Landises and Finney it alleged that the injuries of which plaintiffs complain were the sole and proximate result of the negligence of the Landises and Finney, who are liable to it in event plaintiffs are successful in recovering judgment against the Pikes Peak Company.

The Landises, in their answer, for a first defense denied all negligence; for a second defense alleged that the injuries of which plaintiffs complain were the sole and proximate result of negligence on the part of Finney. For a cross claim against the Pikes Peak Company, they alleged that the automobile involved was operated solely by the Pikes Peak Company as bailee, and that the Pikes Peak Company is liable to cross complainants for any judgment obtained by plaintiffs against them.

Finney, as third party defendant, denied all negligence.

At the conclusion of the trial, separate judgments were entered in favor of McGowan and Alloway, respectively, against the Pikes Peak Company and the Landises in the amounts of $2,500.00 and $850.00, respectively, with the provision that the Pikes Peak Company was awarded a judgment against the Landises in the amount of the McGowan and Alloway judgments;

provided also that the satisfaction of the McGowan and Alloway judgments against the Landises would constitute a satisfaction of the Pikes Peak Company judgment against the Landises.

The court submitted the case to the jury on instructions, and written interrogatories to which written answers were required. The pertinent interrogatories and answers thereto are:

"Interrogatory No. 1. Was Paul A. Zook, the driver of the car in which plaintiffs were riding, guilty of negligence which was the sole proximate cause of the injuries and damages complained of? Answer: Yes.

"Interrogatory No. 2. Was Jim Lyles, the driver of the James Finney car, guilty of negligence which was the sole proximate cause of the injuries and damages complained of? Answer: No.

"Interrogatory No. 3. Were Zook and Lyles both guilty of negligence which negligence, jointly or concurrently, was the proximate cause of the injuries and damages complained of? Answer: No.

"Interrogatory No. 4. Were the injuries and damages complained of by the plaintiffs the result of an 'unavoidable accident' as that term is defined in these instructions? Answer: No."

The trial consumed seven days, and the record is voluminous.

The Landises have filed twenty-six specification of points which they urge for our consideration as grounds for reversal. For the purpose of this opinion these will be consolidated into three groups: first, those relating to negligence and proximate cause; second, instructions and interrogatories; third, those requiring a determination as to who was the employer of the driver of the Landises' car at the time of the accident. The case is remarkable in that neither the Landises, Pikes Peak Company, nor Finney question the amounts of the judgments as excessive. As we understand the contention of the Landises here, it is that if plaintiffs are entitled

to judgments, the Pikes Peak Company should be held primarily liable, or, in any event, liable as a joint tortfeasor.

The evidence is that plaintiffs and a large group of other persons were in Denver in attendance upon some convention, many of whom desired to go to the summit of Pikes Peak by automobile. Some representative of this convention group was contacted by a representative of the Pikes Peak Company, then engaged in the tourist business in the Pikes Peak region, for the purpose of arranging this automobile trip. The Pikes Peak Company was unable to determine whether it had sufficient automobiles to accommodate the number of people desiring to make this trip, and its traffic manager contacted the Landises, who also were engaged in the tourist business, for the purpose of ascertaining how many automobiles they could provide for the accommodation of this convention group in event the need therefor arose. The Landises did, as a matter of fact, furnish three automobiles, only two of which, however, were used in the transportation of the convention group. On the early morning of July 13, 1941, a representative of the Pikes Peak Company was on the special train in which the convention group was traveling from Denver to Colorado Springs and sold tickets to those desiring them. Each ticket entitled the holder to a trip from the railroad depot in Colorado Springs to the summit of Pikes Peak and return. When the train arrived at Colorado Springs the automobiles of the Pikes Peak Company and the three automobiles of the Landises were there for use in making the contemplated trip. One of the Landises' cars, being the one involved in the accident, was driven by one Zook, an experienced driver and one who was accustomed to making the trip to the summit of Pikes Peak. Plaintiffs, together with their husbands and four other persons, were passengers in the Landises' automobile. When all those who had purchased tickets had been seated in the automobiles pro-

vided by the Pikes Peak Company and the Landises, the trip began.

In leaving Colorado Springs, and while on the road to the foot of the highway leading to the summit of Pikes Peak, some of the passengers in the Landises' car complained to the driver about the manner in which it was being driven, stating that the speed was too great. While on the highway leading to the summit of Pikes Peak and on a part thereof practically straight, with an unobstructed view, the driver of the Landises' car attempted to pass an automobile belonging to Finney and driven by Lyles, and in so doing caused the left wheels of his car to run over on the soft shoulders of the highway. As a result thereof, the car tilted to the left at an angle of about forty-five degrees and hung in a perilous position on the edge of the highway. Some of the passengers in the Landises' automobile succeeded in getting out of it on the right hand side and held onto the machine, thus preventing it from going down the mountainside until the other passengers had alighted therefrom. When the wheels of the Landises' automobile sank into the soft dirt of the shoulders of the highway, plaintiffs were thrown to the left side thereof in such a manner that either at this time or while being assisted from the car they received the injuries of which complaint is made. According to the testimony of some of the witnesses, Zook, the driver of the Landises' automobile, was warned not to attempt to pass the Finney automobile at that point, notwithstanding which he attempted to do so, with the results noted. Some of the witnesses testified that at the time of the attempt to pass the Finney automobile, the Landises' car was being driven too fast, and that they had shouted to Zook, asking him not to attempt to pass at that point.

Zook testified that he saw the Finney automobile at the side of the highway either stopped or moving slowly, that he sounded his horn, and, in attempting to pass, was crowded off the highway, veering to the left

in such a manner that he was obliged either to drive onto the soft shoulders or collide with the Finney car. There was nothing to warn Zook that the shoulders on the left side of the highway were not safe.

According to some of plaintiffs' witnesses, there was no veering of the Finney automobile and no horn sounded by Zook. The testimony of the highway patrolman who came to the scene of the accident some time after it occurred was that the wheel marks of the Landises' car, plainly visible on the highway, indicated that it had gradually approached the left shoulder of the highway, rather than making an abrupt turn to avoid a collision with the Finney car, and further that there was no evidence of any abrupt turn. The same witness testified that when he came to the scene of the accident he had a conversation with Zook, the driver of the Landises' car, and when asked to relate the conversation replied: "I asked Mr. Zook what had happened there to cause him to go off and his statement to me was that he didn't know why he went off. He says: I have been driving this Peak for a good many years and I have never done anything like that before."

Lyles, the driver of the Finney car, denied that he turned to the left in the highway, thus crowding the Landises' car therefrom. and occasioning the accident. He proceeded without interruption to the summit of the peak without knowing that an accident had occurred.

1. It is impractical for us to attempt to set forth in detail plaintiffs' evidence offered to establish negligence on the part of the Landises, and equally so to detail the evidence introduced by the Landises to overcome that of plaintiffs. Zook testified that when he attempted to pass the Finney car it "pulled to the left, just slightly," and that the courtesy patrol officer who investigated the accident some time after it happened stated to him, "Mr. Zook, I have to give you a ticket for careless driving." He also testified, without objec-

tion, in response to his counsel's question, that after the ticket was given him by the courtesy patrol officer charging careless driving at the time of the accident, he appeared before the court, plead guilty, and paid a fine. There is evidence that immediately prior to the accident and before Zook attempted to pass the Finney car, several witnesses, passengers in his car, attempted to dissuade him; notwithstanding, he persisted in his attempt to pass the Finney car and immediately the accident followed. There was competent evidence of negligence for the jury's consideration, and even though it determined therefrom that the driver of the Landises' car negligently operated the same, resulting in the accident and injuries, that is a matter which should not seriously concern us, because the jury, having determined that it was the negligence of the driver of the Landises' car which resulted in the accident to plaintiffs' damage, such determination is conclusive here.

2. There were objections made to instructions given by the court and also to certain interrogatories propounded to the jury; also there were tendered certain instructions which the trial court refused to give, and exceptions to such refusals were properly saved. The objections to both instructions and interrogatories pertained largely to the question of negligence and proximate cause. We have examined the court's instructions to the jury, and find that they were sufficiently specific, and that they were couched in such language that a man of ordinary intelligence could readily understand therefrom the law applicable to the case. Many of the instructions were those commonly known as "stock instructions" which we have heretofore consistently approved. With respect to the others, we never have disapproved any of them, and we perceive no substantial error in such instructions. No prejudicial error was committed in the giving or refusal to give instructions or in propounding and requiring written answers to the interrogatories.

3. As we understand the Landises' position in the trial court and presented here, it is that Zook was an employee of the Pikes Peak Company, and, consequently, any damages occasioned the plaintiffs by negligence or recklessness on Zook's part are those for which the Pikes Peak Company is responsible. It is clearly apparent from the evidence that plaintiffs held tickets issued by the Pikes Peak Company which entitled them to transportation from Colorado Springs to the summit of Pikes Peak and return; that Zook was employed by the Landises, received his wages from, and could be discharged by them at any time; and that the Landises and the Pikes Peak Company were engaged in the business of transporting tourists on sight-seeing trips in and around the Pikes Peak region. It is established by the evidence that the Landises were the owners of the automobile driven by Zook in which plaintiffs were passengers. It is equally clear that the tourist trip known as the Pikes Peak trip was over a well-defined and commonly understood route with its termini definitely established. The evidence also discloses that Zook notified his employers, the Landises, of the accident, and not the Pikes Peak Company, and it was the Landises, and not the Pikes Peak Company, who made the arrangements for returning the disabled car to service. It was the Landises, and not the Pikes Peak Company, who arranged for an examination of the plaintiffs and others by Dr. Baker in his office, the doctor thereafter accompanying the plaintiffs to the hospital for treatment. The evidence disclosed that there existed a custom between the Pikes Peak Company and the Landises, as well as others engaged in the same business in the Pikes Peak region, whereby the tickets issued by one of those thus engaged were honored by others likewise engaged in that business, and that when one engaged in the tourist transportation business honored the ticket of a passenger issued by another engaged in the same business, the one performing the service of

transporting the passenger was entitled to eighty or ninety percent of the price of the ticket, depending on the circumstances, and that the one who issued the ticket was entitled to the remainder of the purchase price. It is clearly established by the record that plaintiffs' injuries were the result of someone's negligence.

Under these facts we are confronted with the problem of determining whether the driver of the Landises' car became an employee of the Pikes Peak Company so as to make it responsible to the plaintiffs for damages occasioned by his negligence. This is the sole question for our determination. The Landises take the position that perhaps, under the evidence in the case, Zook was the employee of both the Landises and the Pikes Peak Company, and that the liability for damages to the plaintiff by reason of Zook's negligence is to be joint. Under the evidence here, this position is not sound, and we so hold.

There is no dispute that the Landises were Zook's general employers. The troublesome question for our determination is whether, under the facts and circumstances here, the Pikes Peak Company became a special employer, by reason of which Zook became their special employee. There is lack of uniformity in the authorities respecting this question, and they are in hopeless conflict. There is no decision of our court directly in point, notwithstanding the fact that the Landises' counsel contend that our opinion in *Gallagher Transfer & Storage Company v. Public Service Co. of Colorado,* 111 Colo. 162, 138 P. (2d) 926, is determinative, and Pikes Peak Company counsel contend that our decisions in *Frerker v. Nicholson,* 41 Colo. 12, 92 Pac. 224, and *Thayer v. Kirchof,* 83 Colo. 480, 266 Pac. 225, support their position and are decisive. We are of the opinion that none of the cases is applicable to the point here under consideration.

We have here an instance of a borrowed employee and equipment loaned by the general employer to the

special employer for the purpose of rendering a service in a business in which the general employer, as well as the special employer, is engaged. The liability of the general or special employer is sometimes determined by ascertaining who has control of the borrowed employee and equipment used in rendering the service, and sometimes it is determined by ascertaining in whose business the special employee was engaged. The "control test," as well as the "whose business test," have been variously applied by courts in determining the liability of the employer for injuries occasioned to third parties by the negligence of employees. As we understand the "control test," it may be thus succintly stated: The relation of master and servant exists whenever one person stands in such a relation to another that he may *control the work* of the other and *direct the manner* in which it shall be performed. Some courts use the "whose business test" and hold the owner of the business liable if the servant or employee at the time of the negligent act resulting in damages to others is actually engaged in performing work or labor for the special, rather than the general, employer. We are persuaded that neither test furnishes an infallible rule. Each case must be determined in the light of the existing facts and circumstances, and frequently it is necessary that both rules be considered in determining upon whom the liability shall rest where there is a general, as well as a special, employer, and damages are claimed because of the negligence of an employee.

We believe that the better line of authorities, based upon our general concept of employer-employee relation, stems from the opinion of the New York Court of Appeals in the decision written by the late Mr. Justice Cardozo, then a judge of that court and subsequently an associate justice of the United States Supreme Court, in *Charles v. Barrett,* 233 N.Y. 127, 135 N.E. 199, based, as we understand, largely on the "control" rule. In that action Charles, an employer of a decedent whose death

was negligently caused by an automobile, sued Barrett as president of the Adams Express Company for damages. The facts as disclosed by the opinion are that the Adams Express Company hired an automobile and driver from one Steinhauser, who was engaged in the trucking business. The automobile was loaded and unloaded by the hirer, but while driven between the points of departure and destination, it remained without interference or supervision, in charge of the driver. While the auto was being driven to its destination, it struck decedent, who died as a result of his injuries. Negligence was not denied. "The question is," said Judge Cardozo, "whether the defendant shall answer for the wrong. The trial judge ruled as a matter of law that it must. The Appellate Division, holding the contrary, dismissed the complaint." The eminent judge, continuing, said: "We think that truck and driver were in the service of the general employer. There was no such change of masters as would relieve Steinhauser of liability if the driver of the van had broken the seals and stolen the contents. By the same token, there was no such change as to relieve of liability for other torts committed in the conduct of the enterprise. *Where to go and when might be determined for the driver by the commands of the defendant. The duty of going carefully, for the safety of the van as well as for that of wayfarers, remained a duty to the master at whose hands he had received possession.* Neither the contract nor its performance shows a change of control so radical as to disturb that duty or its incidence. * * * The rule now is that as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division [citing cases]." (Italics ours). So far as we can learn, this rule remains the law in New York.

In *Atlanta Coach Co. v. Curtis*, 42 Ga. App. 639, 157

S.E. 344, the facts and the law applicable thereto sufficiently appear in the following taken from the opinion: "Where a servant is employed to drive a motorbus owned by the master, and operated at the expense of the master in the master's business of carrying passengers for hire, and is placed by the master temporarily at the command of a third person in pursuance of a contract between the master and the third person, whereby the master agrees to furnish a motorbus, the driver, and necessary fuel, and convey certain passengers upon a sight-seeing trip, the third person exercising no control over the servant other than the giving of general directions concerning the trip to be made and the route to be taken, an inference is not demanded that the general master has relinquished control of the servant, so as to be relieved from liability on account of the negligence of the servant while doing the work of the master in carrying out his contract with such third person [citing cases]."

In *Densby v. Bartlett,* 318 Ill. 616, 149 N.E. 591, Densby brought suit against Bartlett and one Saracino for damages sustained as a result of the negligent operation of an automobile in which plaintiff was a passenger.

The facts are: Bartlett was engaged in the real estate business, and in the operation thereof hired cars and drivers from Saracino for the purpose of taking prospective customers to and from properties which he had for sale; a passenger in one of the cars so hired by Bartlett was injured by reason of the negligent operation of Saracino's automobile. The trial resulted in a verdict in favor of Densby against both defendants; Saracino's motion for judgment non obstante veredicto was sustained, but judgment was rendered on the verdict against Bartlett, which was reversed on review. The appellate court held that the relationship of master and servant existed between Bartlett and the driver of the car and therefore affirmed the judgment. Bartlett contended that under the facts and circumstances he was

not liable under the master and servant doctrine. In connection with the determination of the question, Mr. Justice Farmer, speaking for the court, said:

"Whether appellant was liable depends upon whether he was the master, and the driver of the car his servant. Perhaps the most universal and unfailing test in determining the relation of master and servant is where the control of the servant includes the power to discharge. Where that is so, the relation of master and servant exists. The court said in Braxton v. Mendelson, supra [233 N.Y. 122, 135 N.E. 198], the relationship of master and servant may be obscured by circumstances so that no one fact is decisive, and said among other things to be considered is the business in which the general employer is engaged and that in which the special employer is engaged. There can be no question the driver of the car when appellee was injured was performing the service he was employed to perform by the general employer. Saracino was engaged in the business of performing special service to others, and while driving the car in the special service for appellant the driver was engaged in the business he was employed by Saracino to do. This court has stated the rule to be that the relation of master and servant does not exist unless it includes the right to discharge [citing cases].

\* \* \*

"Where the servant of the general master is temporarily loaned or hired to another for some special service and becomes for the first time *wholly subject to the control of the person to whom he is loaned or hired and wholly freed from the control and direction of the general master,* he becomes the servant, for the time being, of the person to whom he is loaned or hired and during such time becomes the servant of the latter. [citing cases] The proof does not show Saracino surrendered the manner in which the car should be driven wholly to the control and direction of appellant. The driver, while performing a special service for appellant, was

performing work of his employer, Saracino, within the scope of his employment, viz., driving cars for persons who hired them from his employer. Many of the cases above cited expressly hold that the right of the hirer to direct the driver when and where to go, whom to haul, and the route to travel does not place the driver under the control of the hirer as to the manner of driving the car. In that regard he is doing the work of the general employer and is not subject to the control of the hirer. In this case appellant was not authorized to discharge a reckless driver and replace him with another driver. At most he could dismiss the car and driver. In the absence of an agreement to do so, it cannot be inferred that the owner of cars of considerable value and requiring competent and skilled persons to drive them, and who employed as drivers men he was willing to trust would authorize one to whom he hired them to discharge the drivers for any reason.

\* \* \*

"In obedience to the overwhelming weight of authority, not only of other jurisdictions, but also of this state, we must hold that under the facts proved the driver of the car was the servant of the general employer, Saracino, who hired and paid him, and who, alone, under the proof, was responsible for his negligence in driving the car." (Italics ours)

"A master cannot avoid liability for the negligent act of his servant by merely showing that at the time of the injury, he had loaned the servant to another; but he must also show that when he loaned him, he surrendered to the borrower the right to control and direct him. To escape liability, *the original master must have resigned full control of the servant for the time being;* it is not sufficient that the servant was partially under the control of another. If he does not surrender full control over the servant, he remains liable for his negligence during the time he acts for the person to whom he is loaned." (Italics ours) 35 Am. Jur., p. 971, §541.

"A servant may be loaned or hired by his master for some special purpose so as to become, as to that service, the servant of the party to whom he is loaned or hired, and to impose on the latter the usual liabilities of a master. The test of liability for the acts of the servant is whether in the particular service which the servant is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded as the right to exercise such control. *To escape liability the original master must resign full control of the servant for the time being,* it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary cooperation where the work furnished is part of a larger operation. A servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out the work to the servant, or gives him signals calling the service into activity, or gives him directions as to the details of the work and the manner of doing it. Keeping in view these principles, it is very generally held that the original master is not liable for injuries resulting from acts of the servant while under the control of a third person, even though the servant remains subject to discharge by the original employer, and is paid by him. On the other hand the original master is liable, and the third person is not liable where the control of the servant is retained by the original master." (Italics ours) 39 C.J., p. 1274, et seq., §1462.

It would unduly prolong this opinion to cite all the authorities supporting in whole or in part the proposition that in the instant case the Landises were the general employers and therefore liable for damages resulting from the negligent operation of the automobile by

Zook; consequently, we shall content ourselves with the following: *Malisfski v. Indemnity Ins. Co.*, 135 F. (2d) 910; *Antonelly v. Adam*, 175 Minn. 438, 221 N.W. 716; *Lowell v. Harris*, 24 Cal. App. (2d) 70, 74 P. (2d) 551; *Lee Moor Contracting Co. v. Blanton*, 49 Ariz. 130, 65 P. (2d) 35; *Irwin v. Klein*, 271 N.Y. 477, 3 N.E. (2d) 601; *Spaulding Oil Mill Inc. v. Mayes*, 48 Ga. App. 613, 172 S.E. 734; *Schluraff v. Shore Line Motor Coach Co.*, 269 Ill. App. 569; *Albert v. Hudson*, 49 Ga. App. 636, 176 S.E. 659.

The rule set forth in these authorities is the one ordinarily used in determining whether an employee is to be deemed the employee of him for whom the work is done or of the one from whom wages and orders and other matters incident to general employment are received. We believe the better rule to be that one is the employee of the person who has the right to control, not merely the result, but the progress and details of the work and the manner in which it is to be performed. If the driver of an automobile selected by the owner is not subject to the control of the one who hires the automobile with the driver for a specific purpose, he must be the employee of the owner. This is true, even conceding that the one who hires the automobile may exercise the right of directing the driver as to when, where and what to do in connection with the trip. Applying the general rule to the instant case, it was the Landises who directed Zook where to go; it was they who owned the automobile; it was they who contracted with the Pikes Peak Company to perform a service; it was they who were to receive the agreed compensation for the services to be rendered by Zook driving their automobile; it was they who assumed the responsibility of restoring their automobile to service; it was they to whom Zook reported respecting the accident; it was they who assumed the responsibility of taking the plaintiffs to the physician's office and from there to the hospital. Under the evidence we conclude that the Landises were the em-

ployers of Zook; that he was engaged in their employment at the time of the accident resulting in injuries to the plaintiffs; and that the accident occurred through Zook's negligence. This being true, the court rightfully determined, as a matter of law, that the Landises were primarily liable in damages.

As heretofore stated, the Landises rely upon our decision in *Gallagher Transfer & Storage Co. v. Public Service Co., supra,* and take the position that under that decision the judgment of the trial court must be reversed. In the Gallagher case Mr. Justice Hilliard, who wrote the majority opinion, might have contented himself with a determination of the question of negligence, and, finding an absence thereof, written nothing further, for in the absence of negligence the Public Service Company could not recover, irrespective of who was the employer of the operator of the shovel. Because the question of whose employee the shovel operator was at the time of the accident alleged, and because of the insistence of counsel that this fact was a determinative factor in the case, the author of the opinion discussed and determined that issue, and in connection therewith clearly pointed out, without determining, that the relative powers of the plumbing company and the plaintiff in error were not involved because neither party issued any explicit or detailed orders to the employee. However, in continuing the opinion and after distinguishing the "carriage cases," Justice Hilliard says: "In that case [Frerker v. Nicholson, 41 Colo. 12] we recognize another and distinct class of cases, as a railroad company not being responsible for the operation of its engine, when the engineer and crew operating it were *under the control of another.*" Later in the opinion we find the statement, "The plumbing company was simply using plaintiff in error's equipment in the performance of a job of its own, with, if exercised or not, complete supervision." There can be no question that in the instant case the Pikes Peak Company would be liable as

the special employer of Zook if the evidence established —which it did not—that Zook was under the "control" or "complete supervision" of that company. As we interpret our decision in *Gallagher v. Public Service Co., supra,* it is favorable to the position of the Pikes Peak Company here.

Ordinarily the Landises would be entitled to have a jury determine the question as to whether Zook was their employee, or the employee of the Pikes Peak Company; however, as we read the record there is no disputed fact bearing upon this question. Under these circumstances, the determination of the issue was for the court, and consequently the Landises were not entitled to have it submitted to the jury.

Other questions raised by counsel for the Landises have been considered, and as to them we find that the trial court committed no prejudicial error.

The judgment is right and is affirmed.