No. 17,927.

OLOF H. JACOBSON, ET AL., DOING BUSINESS AS CITY TRANSFER AND STORAGE COMPANY *v.* WESLEY DOAN AND STANDARD ACCIDENT INSURANCE CO.
(319 P. [2d] 975)

Decided December 23, 1957.

Messrs. McComb, Zarlengo & Mott, Messrs. Lee, Bryans, Kelly & Stansfield, for plaintiffs in error.

Mr. H. D. Reed, Mr. Robert Sunshine, Mr. Frank A. Bruno, for defendants in error.

*En Banc.*

Mr. Justice Hall delivered the opinion of the Court.

Olof H. Jacobson and Acme Fast Freight, Inc., though not parties to the proceedings in this court, were defendants in the trial court, and we shall refer to them in this opinion as Jacobson and Acme.

Plaintiffs in error were defendants in the trial court, and we shall refer to them as defendants; defendants in error were plaintiffs below, and we shall refer to them as plaintiffs or as Doan or Standard.

In a first amended complaint Doan sought to recover

from the defendants and from Olof H. Jacobson and Acme Fast Freight, Inc., the sum of $145,773.94 general damages and $5,000.00 special damages for injuries suffered by him on April 28, 1951. Doan alleges that he was employed by the May Company as a stock clerk and order filler; that on April 28, 1951, Acme· was employed in the usual course of its business by the May Company to haul and deliver an air-conditioning unit from a freight station to the May Company store at 16th and Champa Streets, in Denver; that for the purpose of carrying out its contract of employment Acme hired and employed Jacobson and defendants, together with their trucks, etc., and Acme, Jacobson and defendants jointly· and severally undertook to move and .deliver said equipment and unload same *upon the docks·of the said May Company;* that it became apparent to Acme, Jacobson and defendants, and each of them, that they did not have and possess the necessary manpower and equipment to unload the equipment, whereupon each of the parties named as defendants in the trial court: "did request, solicit, implore, demand and petition the said May Co. to supply the necessary man power to effectuate said unloading."

That Doan and four other employees of said May Company were *directed by their superior* to assist in the moving and unloading of said equipment "under the direction, supervision and control of the defendants, and each of them, their and its employees.

\* \* \*

·"That while the plaintiff, Wesley Doan was engaged in assisting in the moving and unloading of said equipment, *and while he was under the supervision, control and direction of the defendants,* and each of them, as related in Paragraph 7, supra, and as the direct and proximate result of the negligence, carelessness and recklessness of the defendants, and each of them, their and its employees, servants and agents, said heavy equipment fell upon and against the plaintiff, Wesley Doan,

causing the serious and permanent injuries hereinafter more specifically set forth." (Emphasis supplied.)

The extent of Doan's injuries and expenses incident thereto are set out in detail in plaintiffs' complaint.

In a second cause of action, Standard alleges that it is the compensation insurance carrier for May Company; that Doan, as an injured employee of May Company, filed his claim for Workman's Compensation and was awarded compensation in the amount of $4,226.06, which amount Standard paid to Doan, and that by virtue of Section 366, Chapter 97, 1935 Colorado Statutes Annotated (C.R.S. '53, 81-13-8), the claim of Doan against defendants, to the extent Standard paid Doan, was assigned by operation of law to Standard.

The defendants answered and alleged that: (1) they were acting as independent contractors, and denied any negligence on their part; (2) Doan was guilty of negligence which contributed to his injuries; (3) Doan's injuries were caused by the sole negligence of Doan, and (4) the injuries were the result of an unavoidable accident.

At the close of Doan's and Standard's evidence, Acme's motion for dismissal was granted. The other defendants' motion for dismissal was denied, and after the evidence was all in was renewed and again denied. Defendants then brought to the attention of the trial court the fact that Olof H. Jacobson had died and they moved for dismissal as to him, which motion was granted.

The jury, on November 26, 1955, returned its verdict for Doan in the amount of $24,458.88, and for Standard in the amount of $5,541.12. Defendants' motion for judgment, notwithstanding the verdicts, and for new trial was denied and, on January 30, 1956, the trial judge signed and caused to be filed, nunc pro tunc as of December 27, 1955, with date of entry January 3, 1956, "Orders, Findings and Judgment" for Doan in the amount of $28,673.93, and for Standard in the amount of $6,496.04, being the amounts of the verdicts to which the

court added interest thereon from the date of the filing of the action, February 20, 1953, to December 27, 1955. Defendants are here by writ of error and assign six reasons for reversal and dismissal of Doan's and Standard's complaint.

The evidence clearly establishes the fact that the May Company had purchased from Carrier Corporation, of Syracuse, New York, an air-conditioning unit which was to be installed by Stearns-Roger Manufacturing Company on the seventh floor of the May Company building in Denver. The unit consisted of two skids, one crate, and four cartons, having a total weight of about 6600 pounds. The larger of the two skids was about twelve feet long, six feet high, three and a half feet wide, and weighed about 4500 pounds; the smaller skid weighed about 1300 pounds, and the crate and four cartons had a total weight of about 800 pounds. The unit was shipped from Syracuse, New York, and was unloaded at the Acme Fast Freight, Inc., dock in Denver, and on the afternoon of April 28, 1951, the defendants were engaged by Acme, as stated in the complaint, to " * * * move, transport, deliver and unload said equipment, machine and appliances *to and upon the docks of said May Co.* * * *." (Emphasis supplied.)

The unit was loaded on two trucks of the defendants at the Acme dock, and the two truck drivers and one helper of defendants proceeded to the May Company dock. On arrival at the May Company dock, the truck containing the larger skid was backed up to the dock and the two truck drivers and helper undertook to move the skid from the truck to the dock and experienced difficulty in so doing because of lack of sufficient man power and proper tools and equipment for handling a skid of this size and weight. There is some testimony to the effect that one of the three employees of the defendant requested Mr. Knapp, a May Company employee in charge of its receiving room and dock, for some help in removing this large skid from the truck to the dock. Mr.

Knapp delegated Doan and four other young boys, nineteen and twenty years of age, all employees of the May Company, all without previous experience in the handling of heavy freight, to assist in unloading this unit. Someone, presumably acting in behalf of the May Company, brought to the dock two dollies and some 2 x 4's or 4 x 4's, borrowed by defendants from the May Company, being the property of the May Company. The dollies were platforms mounted on wheels of small circumference and designed for and generally used to lift articles a few inches from a floor and to move the same across a floor, such as the May Company dock. The defendants with the aid of the five May Company employees, who were no longer under the supervision of the May Company (Mr. Knapp having returned to his work upstairs), finally succeeded in removing the unit completely from the bed of the truck and a foot or two onto the dock, so that a person could have remained on the dock and walked completely around the unit.

At this point, the defendants' three regular employees apparently considered this item as delivered; however, a May Company employee, "a man in a white shirt," then on the dock, requested that the item be moved away from the entrance to the dock and back against a wall, and the three employees of defendants and the five May Company employees, all under the supervision, direction and control of defendants, undertook to comply with his request, and, during this second stage of the movement, some one or more of the eight persons seeking to slide the unit nearer the wall put a bar under the unit in order to slide it and took too big a bite with the bar and negligently tipped the unit over onto Doan, causing the injuries for which damages are sought.

The rights and duties of the parties depend upon the status of each during the movement of the air-conditioning unit.

Clearly, it was the duty of the defendants to remove the unit from its truck onto the May Company dock. The

evidence supports a finding to the effect that defendants were still in the performance of their contractual duties in seeking to move the unit nearer the wall at the time it was dumped over or fell upon Doan. Defendants experienced difficulty in performing their contractual duty because of lack of man power and proper equipment, and with the unit half on the truck and half on the dock, help was provided by the May Company. Whether the help was solicited, demanded or offered by the May Company we consider immaterial. Doan, an employee of the May Company according to the plaintiffs' pleadings and proof, was directed by Knapp, his superior, to proceed to the dock and "to assist in the moving and unloading of said equipment, *under the direction, supervision and control of the defendants * * *.*" (Emphasis supplied.)

Doan followed the directions of his general employer and assisted in removing this unit from the truck to the dock and beyond, to a point near the wall. During this operation, Doan's actions, conduct and movements were under the exclusive supervision and control of the defendants and their regular employees; no May Company supervisor was directing the work; the work being done was that of the defendants.

Doan contends that during this operation his status was that of a "licensee *with an interest,* and as such entitled to the duty of reasonable care for his safety." (Emphasis supplied.)

We fail to see wherein Doan had any interest in the unloading of this equipment. The unloading was defendants' problem and not Doan's, and indeed not the May Company's problem. Defendants contend that Doan's status was that of a "mere volunteer" and the defendants owed him only the duty not to intentionally injure him. We do not agree with either contention, but are persuaded that, at the time of his injuries, Doan was a general employee of the May Company, loaned to defendants for a special purpose, and while engaged in that

purpose he was an employee of the defendants with the attendant rights and duties of an employee.

"The general servant of one person may be lent to, and become the servant of, another by submitting himself to the direction and control of the other with respect to a particular transaction or piece of work * * *.

"* * * The determination of whose servant an employee is in a given case depends on who has the right to control him with respect to the work in question * * *."
— 56 C.J.S., page 38, section 2.

In *Rosander v. Market St. Ry. Co.*, 89 Cal. App. 721, 265 Pac. 541, we find the following language:

"It is now well settled in this state that there may exist at one time the relationship of general employer and a special employer as to one employee."

In *Hotel Kansan Operating Co. v. Olson*, 171 Kan. 295, 232 P. (2d) 417, we find the following language:

"We cited several authorities to the effect that a general servant of one party may be loaned by his master for some special purpose so as to become for that service the servant of the party to whom he is loaned and to impose on him the usual liabilities of a master."

The factual situation in the case of *Spanja v. Thibodaux Boiler Works, Inc., et al.*, 2 So. (2d) 668, is very similar to the case before us. In that case the plaintiff, a general employee of The Texas Company, one of the defendants, was instructed by The Texas Company to assist The Thibodaux Boiler Works Inc. to help in unloading from Thibodaux' truck onto plaintiff's boat a compressor and welder to be transported, together with Thibodaux' employees, to a well being drilled by The Texas Company eight miles out in the marshes. During the unloading in which plaintiff and another employee of Texas Company and several regular employees of Thibodaux participated, all under the control and supervision of Thibodaux, the compressor fell and injured plaintiff. Plaintiff brought suit against The Texas Company and against Thibodaux, seeking to recover in tort

for negligence. The court held that the plaintiff was a general employee of The Texas Company and as such was limited to recovery of compensation from it; that plaintiff was loaned by The Texas Company to assist Thibodaux in unloading the compressor, all of his actions in that work being under the direct supervision, direction and control of Thibodaux, no Texas Company supervisor being present, and thereby became an employee of Thibodaux and as such he became a fellow servant with Thibodaux' regular employees and, even if injured because of the negligence of Thibodaux' regular employees, his injuries were caused by a fellow servant and for which the master is not answerable.

The court said:

" * * * Spanja was sent to Empire to transport the machinery back to the oil well * * *. But the transferring of the machinery was not his job and it was not the job of the Texas Company. It was the job of the Thibodaux Company and when, at the request of employees of that company, he undertook to assist them in their particular work, he became an employee of their employer, the Thibodaux Company."

A leading case is *Standard Oil Co. v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480, wherein it is said:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom

the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen * * *."

In *Thayer v. Kirchhof,* 83 Colo. 480, 266 Pac. 225, the above case is cited with approval as the leading case in the Supreme Court of the United States on this general subject.

The problem was dealt with at length by this court in *Landis v. McGowan,* 114 Colo. 355, 165 P. (2d) 180. In that case the court said:

" * * * The liability of the general or special employer is sometimes determined by ascertaining who has control of the borrowed employee and equipment used in rendering the service, and sometimes it is determined by ascertaining in whose business the special employee was engaged. The 'control test,' as well as the 'whose business test,' have been variously applied by courts in determining the liability of the employer for injuries occasioned to third parties by the negligence of employees. As we understand the 'control test,' it may be thus succinctly stated: The relation of master and servant exists whenever one person stands in such a relation to another that he may control *the work* of the other and *direct the manner* in which it shall be performed. Some courts use the 'whose business test' and hold the owner of the business liable if the servant or employee at the time of the negligent act resulting in damages to others is actually engaged in performing work or labor for the special, rather than the general, employer. We are persuaded that neither test furnishes an infallible rule. Each case must be determined in the light of the existing facts and circumstances, and frequently it is necessary that both rules be considered in determining upon whom the liability shall rest where there is a general, as well as a special, employer, and damages are claimed because of the negligence of an employee."

Applying each or both of these tests to Doan leads to but one conclusion: that Doan was a loaned or borrowed

employee of defendants at the time of his injuries. The undisputed evidence firmly establishes the fact that at the time Doan was injured he and the four other loaned employees of the May Company and the three employees of defendant were all employees or servants of the defendant. Doan was injured by the negligence of fellow employees in tipping the unit over and onto him. Masters, at common law, are not answerable for injuries inflicted on an employee through the negligence of a fellow employee, and therefore Doan has no common law rights to recover for his injuries. We are, however, of the opinion that Doan, by his complaint and proof, has brought himself within the provisions of C.R.S. '53, 80-6-1: "Every corporation or individual who may employ agents, servants or employees, such agents, servants, or employees being in the exercise of due care, shall be liable to respond in damages for injuries or death sustained by any such agent, servant or employee resulting from the carelessness, omission of duty or negligence of such employer, or which may have resulted from the carelessness, omission of duty or negligence of any other agent, servant or employee of the said employer, in the same manner and to the same extent as if the carelessness, omission of duty or negligence causing the injury or death was that of the employer," as limited by 80-6-4:

"All actions provided for by this article shall be brought within two years from the date of the accident causing the injury, if death does not ensue, or within two years from the date of death, in the case of injury resulting in death. The amount of damages recoverable under this article in case of personal injury resulting solely from negligence of a co-employee shall not exceed the sum of ten thousand dollars."

The above section creates a statutory action in behalf of an employee against his employer for injuries arising out of the employer's negligence or the negligence of a fellow employee. C.R.S. '53, 80-6-5, abolishes the common law rule that an employee assumes the risks and

dangers of his employment. The construction, interpretation, application and effect of these statutes have been carefully analyzed and applied by the Circuit Court of Appeals, Tenth Circuit, in *Ferguson v. Ringsby Truck Line,* 174 F. (2d) 744 (Colo. 1949). We quote therefrom with approval:

"Section 1 of the 1911 Act, supra, [C.R.S. '53, 80-6-1] makes every employer liable in damages for injuries or death to an employee, when caused by its own negligence or the negligence of a co-employee; * * * Section 4 imposes a two year statute of limitations on all rights of action created by the act, and specifically provides that the amount of damages recoverable for personal injuries resulting solely from the negligence of a co-employee shall not exceed the sum of $10,000.

\* \* \*

"If the 1911 Act gives an employee a cause of action for the negligence of his employer, it of course controls over the common law, and the two year statute of limitations is applicable, unless the 1915 Act supersedes the 1911 Act in respect to this particular class of actions.

\* \* \*

"It is thus manifestly plain that the purpose and effect of the 1911 Act was not only to abolish the fellow servant doctrine, as urged by appellant, but also to create in the employee or his survivors, a statutory action for the employer's negligence within the time specified therein. It, therefore, gave a right of action in derogation of the common law, and supersedes it to the extent necessary to give full force and effect thereto. Southerland Statutory Construction, Vol. 3 Sec. 5301; Colorado State Board of Pharmacy v. Hallett, 88 Colo. 331, 296 P. 540. In re Roberts' Estate, 58 Wyo. 438, 133 P. 2d 492, 500.

"The 1911 Act was silent as to the common law defense of assumption of risk, and it therefore survived the statute until the 1915 Act, supra, which relieved the employees and workmen from the assumption of risk for

injuries or death. This Act, like the Act of 1893, did not purport to create any new right of action. It merely abated a common law defense to a statutory cause of action.

"This construction of the statutes is entirely consonant with the governmental policy to statutorily control employer-employee relations. Any other construction would be inconsistent with legislative policy."

Though this case was not tried on the theory that Doan was an employee of defendants at the time of his injuries, yet we find his complaint and proof warrant recovery pursuant to C.R.S. '53, 80-6-1, as limited by 80-6-4. Defendants' answer is broad enough to put in issue all matters required to be proven by plaintiff to entitle him to recovery under the statute, and all defenses pled or tendered were fully presented. The jury by its verdict resolved the issue of negligence in favor of the plaintiffs and against the defendant and, while it assessed damages in the total amount of $30,000.00, recovery under the statutory action is limited to $10,000.00, and the judgment must be reduced to that amount.

Standard, in its complaint, alleges that it paid to Doan *workmen's compensation* in the amount of $4226.06 for which it seeks reimbursement as assignee pursuant to C.R.S. '53, 81-13-8. At the trial counsel for Standard, who was also counsel for Doan, called as a witness for *plaintiffs* one Forrest Duncan, claim agent who had processed Doan's compensation claim against May Company and Standard. Duncan testified, without objection, that Standard's "actual payment for compensation of all classes was $4226.06, plus $1315.06 as medical, hospital and surgical expense" (these two items total $5541.12).

The trial judge instructed the jury that:

" * * * it will be your duty to award to the plaintiff, Standard Accident Insurance Company, any sum or sums of money which you find it has paid to the plaintiff, Wesley Doan or on his behalf * * * but in no event to exceed $5541.12."

The jury found in favor of Standard for the amount of $5541.12 and a reading of the record and briefs indicates that the court, the parties and their respective counsel are satisfied with this apportionment to Standard from the total award.

This court is convinced that Standard is entitled to $4226.06 and no more.

■ The Workman's Compensation Law, C.R.S. '53, 81-13-8, provides the only authority for Standard's claim. Pertinent portions of the statute are as follows:

" * * * the awarding of *compensation* shall operate as and be an assignment of the cause of action against such other (defendants in this case) to * * * or insurance carrier liable for the payment of such *compensation.* Said insurance carrier shall not be entitled to recover any sum in excess of the *amount of compensation* for which said carrier is liable * * *."

Significantly, nothing is said about recovery back of benefits (hospital, medical and surgical expenses) paid in behalf of an injured employee. Further emphasis to the distinction between *benefits* and *compensation* is found in C.R.S. '53, 81-10-1 (providing for payment of medical, hospital and surgical *benefits*); 81-13-4 (providing for a 50% reduction in *compensation payments* in case of employee's violation of certain safety rules); 81-5-7 (providing for 50% increase in compensation in event of employer's failure to comply with insurance provisions of act).

Standard, as statutory assignee, is entitled to recover only the amount of *compensation paid* and is not entitled to recover for *benefits* (hospital, doctor and surgical expenses) paid. (All emphasis supplied.)

In *Wilson v. Smith,* 110 Colo. 68, 130 P. (2d) 1053, this court, in construing 81-13-8, said:

" * * * in the event of a recovery from defendants for the wrong alleged, the commission first is entitled to receive from the sum awarded *the amount of compensation* for which the state fund is liable under the act, the

balance, if any, to go to Wilson." (Emphasis supplied.)

In *Industrial Com. v. Hammond*, 77 Colo. 414, 236 Pac. 1006, this court held that 81-5-7, supra, which provides for fifty per cent increase in *compensation payments* by an employer who has no insurance does not provide for fifty per cent increase in medical payments. The court said:

"Finally defendant in error insists that the commission erred in adding fifty per cent to the medical, surgical, hospital and undertaker's claims, and in this we think he is correct. Section 51, L. 1919, p. 719, imposes upon the employer the duty of furnishing medical, surgical, nursing and hospital treatment and supplies and apparatus for a fixed time and to a fixed minimum regardless of the compensation allowed, and where such bills are not paid but are included in the award they are paid direct to those who have rendered the service or furnished the supplies. In view of these facts we cannot construe the words 'compensation or benefits,' used in that portion of said section 27 hereinbefore quoted, as including such expenses."

The verdict in favor of Standard must be reduced to $4226.06.

The trial court allowed plaintiffs interest on the amounts found by the jury from the date suit was filed. Defendant claims that the complaint is insufficient to warrant recovery of interest in that there is no allegation in the complaint proper with reference to interest, the only mention thereof being in the prayer wherein Doan prays for $145,773.94 general damages, and $5,000.00 special damages; Standard prays for $4,226.06. Following these two prayers appears the following:

"For interest and costs of suit and for such other * * *."

Plaintiffs' claim for interest from the date suit was filed is based on C.R.S. '53, 41-2-1, the pertinent part reading as follows:

" * * * it shall be lawful for the plaintiff *in the com-*

*plaint* to *claim* interest on the damages alleged from the date said suit is filed; and, *when such interest is so claimed,* it shall be the duty of the court * * * to add *' * * interest * * * from the date such suit was filed to the date of entering said judgment, and to include the same in said judgment as a part thereof." (Emphasis supplied.)

Counsel contend that the statutory wording "in the complaint," is not satisfied by making the claim *in the prayer* of the complaint.

Strictly speaking, we no longer proceed by complaint, but rather by "claim for relief." Rule 8(a), R.C.P., provides that claims for relief " * * * shall contain * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief to which he deems himself entitled."

█ Under the above rule the prayer or demand is a necessary part of the "claim for relief" and making claim for interest in the prayer meets the requirements of the statute and the plaintiffs are entitled to interest.

We quote with approval from *Bridges v. Ingram,* 122 Colo. 501, 223 P. (2d) 1051:

"Under these rules, and the great weight of the decided cases in jurisdictions where similar rules are in effect, it is very apparent that the chief function of a complaint is to give notice. * * *. If sufficient notice concerning the transaction involved is afforded the adverse party, the theory of the pleader is not important. If, under the facts, the substantive law provided relief upon any 'theory,' the cause should proceed to judgment. * * *."

The judgments are reversed and the cause remanded to the trial court with instructions to enter judgment in favor of Standard Accident Insurance Company for the amount of $4226.06, together with interest thereon at the rate of six per cent per annum from February 20, 1953, to the date of the judgment so entered, and to enter

judgment in favor of Doan for the amount of $5773.94, together with interest thereon at the rate of six per cent per annum from February 20, 1953, to the date of the judgment so entered, plaintiffs to recover their costs in the trial court and in this court.