510 P.2d 464 (1973)
Robert Patrick COLWELL and the State Compensation Insurance Fund, Plaintiffs-Appellees,
v.
Perry OATMAN and Labor Pool of Colorado, Inc., a Colorado Corporation, Defendant-Appellant.
No. 71-454.
Colorado Court of Appeals, Div. II.
March 27, 1973.
Rehearing Denied April 17, 1973.
*465 William Myrick, Denver, John Criswell, Englewood, for plaintiffs-appellees.
Montgomery, Little & Young, David C. Little, Denver, for defendant-appellant.
Selected for Official Publication.
PIERCE, Judge.
Plaintiffs, Robert Colwell and the State Compensation Insurance Fund, brought this action against Labor Pool of Colorado, a corporation in the business of furnishing labor to other businesses, and its employee, Perry Oatman, seeking damages for injuries Colwell received while on the job. Plaintiffs allege that Labor Pool and Oatman were responsible for Colwell's injuries, which resulted from an accident in which Oatman, while attempting to unload a refrigerator from a truck, dropped it off the rear of the truck onto Colwell. Oatman was not served with process and did not appear.
By this action, plaintiff Colwell sought his medical expenses, lost wages, pain and suffering, and temporary and total disability. The State Compensation Insurance Fund was joined as subrogee to certain of Colwell's rights. The jury returned a verdict in favor of Colwell and the Fund in the amount of $75,000. Labor Pool appeals. We affirm.
The following facts were established at trial. On the date of the accident, Colwell's employer, Murph's Express, ordered two men from Labor Pool to help with the loading and unloading of heavy appliances. Oatman and another man were selected by Labor Pool. Upon their arrival at Murph's Express, the management refused to allow Oatman's partner to start work due to his "obviously drunken condition."
Thereafter, Oatman was assigned to assist Colwell in moving some refrigerators. Colwell soon noted that Oatman had a strong odor of alcohol about him and due to intoxication or for other reasons, he was unable to handle the refrigerators in the loading operation. As a result, Colwell completed the loading operation on his own. He and Oatman then drove to the site where the refrigerators were to be unloaded. Upon arrival there, Colwell instructed Oatman to remain on the ground and lower the refrigerators to the ground as Colwell slid them off the back of the truck. It soon became apparent that Oatman did not have sufficient strength to accomplish this task and they switched positions. Colwell then instructed Oatman to bring the refrigerators out to the edge of the truck bed and hold back on the weight as each appliance was unloaded. As the first refrigerator was being unloaded, Oatman allowed it to topple off the end of the truck onto Colwell, and the injuries complained of resulted.
Labor Pool brings this appeal, asserting several points of error. We affirm.

RESPONDEAT SUPERIOR
Labor Pool first argues that under the terms of its contract with Murph's Express, Oatman was a loaned service employee, exclusively under the control of Murph's Express, and that, thus, Labor Pool could not be held responsible under theory of respondeat superior. The problem of determining whether the general or the special employer is responsible for the torts of a servant loaned by the general to the special, has been confronted before by the Colorado Supreme Court. Chartier v. Winslow Crane Service Co., 142 Colo. 294, 350 P.2d 1044; Landis v. McGowan, 114 Colo. 355, 165 P.2d 180. Although the results of these cases differ, the ultimate principle to be extracted from each is that a determination of which master is to be liable, in the absence of statute, depends upon who controls the servant. This determination is ultimately a question of fact.
*466 The question becomes one of determining whether sufficient facts were offered to support the jury's conclusion that Labor Pool had not surrendered enough control over Oatman to escape liability for his torts.
Testimony at the trial established the following facts with regard to the nature of Labor Pool's business: It is only when the persons hired by Labor Pool are performing services for one of its customers that either Labor Pool or the employee receives any compensation; the compensation of these employees is paid by Labor Pool, which withholds taxes, social security and workmen's compensation premiums; and Labor Pool has the right to hire and fire its own employees.
Further evidence established that when Labor Pool sends an employee on a job, the employee presents to the customer a contract covering his services. The contract specifically provides that the loaned employees are employees of Labor Pool and cannot be hired by the special employer for a period of ninety days. The contract also provides other restrictions on the use of the employees.
After an employee is on the job, Labor Pool continues to exercise a certain degree of control over the employee. The fact that Labor Pool has this right, regardless of the manner in which it is exercised, is, in itself, sufficient evidence to establish the requisite control to hold Labor Pool liable. Keitz v. National Paving & Contracting Co., 214 Md. 479, 134 A.2d 296, 136 A.2d 229. Testimony further established that Labor Pool representatives can visit the job sites from time to time and actively supervise Labor Pool's employees on the job. They also make checks on the employee's physical condition.
Labor Pool, relying on Jacobson v. Doan, 136 Colo. 496, 319 P.2d 975, maintains that a contrary rule is in effect in the State of Colorado. We do not agree. The Jacobson case is entirely consistent with the rule we announce here. The distinguishing factor between the two cases is that in the Jacobson case, the loaning employer did not retain any significant control over the loaned employee and it was the loaned employee who was injured by the third party.
Labor Pool's customers also have certain elements of control over the employee. For example, a customer may request a certain employee (a request not binding on Labor Pool) or it may refuse to utilize the services of any individual sent by Labor Pool. Furthermore, the customer may direct the employee in the performance of his duties, and may remove him from the job. They cannot, however, discharge the individual from Labor Pool's employ.
It is clear that Labor Pool and its customers share in the responsibility for controlling the employees while they are working for the customer. This fact, in and of itself, however, does not establish that Labor Pool has surrendered enough control over the employees to escape liability for their torts. Dickerson v. American Sugar Refining Co., 211 F.2d 200. This being so, the verdict will not be disturbed on appeal. Landis v. McGowan, supra.

NEGLIGENCE
Labor Pool next contends that the evidence at trial failed to establish a breach of duty on its part when it selected Oatman for the job at Murph's Express, and that, thus, the evidence fell short of establishing negligence on its part. Labor Pool's sole business is that of selecting employees to do the work of others. It is established that negligence in the selection of a servant is actionable. Restatement Second of Agency § 213. See Denver & Rio Grande R. R. Co. v. Ptolemy, 69 Colo. 69, 169 P. 541; Lovejoy v. Denver & Rio Grande R. R. Co., 59 Colo. 222, 146 P. 263. We adopt the rule that when an employer, such as Labor Pool, selects an employee, it must exercise the care of a reasonably prudent person in selecting employees, so as to obtain employees who are physically able to perform the work which the employment agency has reason to know they will be *467 called upon to perform. Haskell v. Boston District Messenger Co., 190 Mass. 189, 76 N.E. 215. Here, there was sufficient evidence indicating a lack of such care so as to present a jury question.
The evidence established that at the time of the receipt of the order from Murph's Express, Oatman, along with other prospective employees of Labor Pool, was in an outer room at the offices of Labor Pool. His only contact with the management was through a small window in the wall between the assembly room and the dispatching office. Upon receiving the order from Murph's Express, the dispatcher called through the window and selected Oatman and the other man to undertake the job at Murph's Express. They each came to the window and received an employment contract form to be delivered to Murph's Express. The dispatcher did not question them or inspect them in any way, but sent them directly to Murph's Express, which was a short distance from Labor Pool. At trial, it was established that in addition to Oatman's apparent intoxicated state, he had two cracked ribs as a result of a fracus he had been involved in the previous evening.
Applying these facts to the above-stated duty, the jury could properly have found Labor Pool to be negligent in its selection procedure. This determination, being supported by evidence, will not be disturbed on appeal.

CONTRIBUTORY NEGLIGENCE AND ASSUMPTION OF RISK
Labor Pool next argues that even if it can be held negligent under either of the above theories, Colwell was guilty of contributory negligence or assumption of risk as a matter of law, barring any recovery by him. Whether or not Colwell, after observing that Oatman had been drinking and was incapable of the more difficult task of handling the refrigerators from the ground, was guilty of contributory negligence, was ultimately a factual issue about which reasonable men could differ. It was not error to submit this question to the jury, Mullin v. Babcock, 167 Colo. 369, 447 P.2d 697, and the jury verdict is supported by the record.

DAMAGES
Next, Labor Pool complains that the damages awarded by the jury were excessive. We do not agree. Evidence was presented to show that in addition to plaintiff's out-of-pocket expenses, he had permanent injuries, restricting his ability to perform heavy lifting, which made it necessary for him to take a lower-paying job; that he was still experiencing pain at the time of the trial; and that this pain would continue. These facts justified the determination by the jury that plaintiff was entitled to compensation for his past, present and future pain and suffering, his permanent injuries or disabilities, his loss of earnings and impairment of earning capacity, and his out-of-pocket expenses. Under all the circumstances presented in this case, the $75,000 judgment was not grossly and manifestly excessive. Gibbons v. Choury, 169 Colo. 267, 455 P.2d 649; Chartier v. Winslow Crane Service Co., supra.

INSTRUCTIONS
Labor Pool finally contends that the trial court erred in certain of its instructions. We have considered the points of error alleged by Labor Pool with regard to the instructions given and in light of the foregoing discussion of the applicable law, find them to be without merit.
Judgment affirmed.
SILVERSTEIN, C. J., and ENOCH, J., concur.