## No. 20,039.

### THE CITY OF AURORA *v.* JO ANN L. WEEKS.
(384 P. [2d] 90)

Decided June 24, 1963.     Rehearing denied August 19, 1963.

510

Messrs. SHELDON and NORDMARK, Mr. RICHARD C. Mc-LEAN, for plaintiff in error.

Mr. GEORGE L. ZOELLNER, Mr. GEORGE A. HINSHAW, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THIS writ of error is directed to a judgment secured in a trial to the court in favor of defendant in error Jo Ann L. Weeks in the amount of $11,571.70 for injuries suffered in a swimming pool accident. We will refer to the parties as they appeared in the trial court, where plaintiff in error City of Aurora was defendant and defendant in error Weeks was plaintiff.

The record discloses that on July 4, 1958, plaintiff, who was then 31 years of age, along with members of her family, entered a swimming and diving pool compound owned and operated by defendant. They purchased tickets at approximately 1:00 P.M. and all were thereafter admitted into the swimming pool area. After remaining for a short while in the swimming pool, plaintiff and her two brothers proceeded to use the diving boards located in another pool a short distance away.

The diving pool had three boards at one end, the one in the middle being 13 feet high and the ones on either side each being about three feet above the water and about 9'4" from their respective sides of the pool. A sign with large lettered words clearly visible on the side of the center diving board warned swimmers to dive only from the end of the board. Located in the diving pool at a depth of 34 inches to the center thereof, and beneath the surface of the water, were a number of lights for illuminating the water at night. These lights were set in metal boxes recessed into the concrete sides of

the pool. Each light was covered by a glass lens 12 inches in diameter and approximately one-fourth inch thick. The one involved in this accident was four and a half feet from the rear wall of the pool and on the right side of the low diving board to the right of the center board.

Although plaintiff was able to swim she had not before attempted any diving. She was preceded into the water by her two brothers and then she went onto one of the side diving boards.

The testimony reveals that plaintiff was somewhat nervous once on the board and that she walked back and forth at least once and possibly several times. She finally jumped, feet first, from the board and came up at the side of the pool without having touched the bottom of the pool. At this point she discovered she had injured her right knee.

There was a conflict in the evidence as to just what happened prior to plaintiff's jumping off the board. Defendant's lifeguard testified that when he saw her on the board he realized she was an inexperienced diver and was being made nervous by her two brothers who were calling to her and urging her to jump. The lifeguard stated that he blew his whistle and shouted at her to be sure to go off the end of the board. Plaintiff and her two brothers, however, testified that no one urged her to jump and that none of them heard a whistle. There was also a conflict in the testimony as to where on the board plaintiff jumped from. She maintained that it was near the end of the board, but off to the side. The lifeguard stated it was from the middle of the board and clearly to the side.

The lifeguard further testified that when plaintiff jumped her legs were pulled up towards her body and her arms stretched out as if she were reaching for the side of the pool. When she hit the water he said he heard a loud cracking noise as if she had hit the side of the pool.

Plaintiff testified that she did not feel herself hit the side and only was aware that she had injured her knee as she came up out of the water. She was then helped out of the pool, first aid was given and an ambulance called. She was eventually taken to St. Luke's hospital where it was determined that she had lacerations on her right knee and a complete severance of the patillar tendon that runs from the knee cap to the leg bone, as well as lacerations extending through the ligaments and into the joint of the right knee. Two operations were required to repair her injuries.

Following the accident the diving pool was closed and a search made for the cause of the injury. It was at this time that a broken light lens was discovered in the pool wall located on the side of the pool nearest the diving board used by the plaintiff and where plaintiff had jumped into the water.

Among plaintiff's witnesses was defendant's pool manager who was called as an adverse witness. He testified that as a matter of routine the lights in the pool were checked each evening by turning them on and off several times to see if they all would light; that they had been so checked the night before this accident; that usually no other check was made unless employees were in swimming and noticed something "out of place" or occasionally when swimming they would reach down and feel the lights; and that the bottom of the pool was vacuumed every Sunday morning and sometimes more often.

Defendant called as a witness the lifeguard who was on duty at the time of the accident. When the accident occurred he was sitting on an elevated chair on the side of the pool into which the plaintiff jumped. His chair was located half way down the length of the pool. He testified, as previously noted, to what occurred when plaintiff jumped, and in addition stated that the bottom of the pool had been cleaned the night before and he himself had checked all the lights that morning. Fur-

ther testimony was given to the effect that the pool was constructed in a standard manner, according to general specifications for swimming and diving pools.

Included in the evidence presented were written interrogatories directed to defendant and answered by Ray Johnston, Clerk-Treasurer of the City, who knew about the pool construction and operation. Two of these and their answers are pertinent here. They state:

"Interrogatory No. 26: 'State what efforts the defendants took, if any, to make this particular illuminating device safe for the plaintiff.'

"The answer is: 'Normal inspection and maintenance and, when necessary, repairs.'

"Interrogatory No. 29: 'State if the cover over the illuminating device where the plaintiff was injured was such that it could be broken by contact on July 4, 1958.'

"The answer is: 'The cover could be broken by violent contact under certain conditions although it was a standard piece of equipment.'"

At the conclusion of the trial the court made findings of fact and conclusions of law which read in part as follows:

"The plaintiff contends that her injury was caused because of some defect in the diving pool, whereas the City contends that she jumped in a fashion contrary to the rules of the pool, in such a fashion that her knee struck the submerged illuminating device and broke it, thus making it possible for her to receive the injury.

"In the opinion of the Court it is almost incredible that a woman of the slight stature of the plaintiff could have broken the lens of the illuminating device by merely jumping into the water — or even jumping directly against the lens — and the testimony indicates, and the Court believes, that the plaintiff did not actually jump as far as the edge of the pool so as to have struck the lens directly with her knee or any other part of her body.

"It is the finding of the Court therefore that the

injury came about because of some defect in the pool, probably because the lens of the illuminating device had been broken before the plaintiff was permitted to use the pool. The Court further finds that the City of Aurora did not use due care in seeing to it that the diving pool and its arrangements were in a reasonably safe condition before permitting the plaintiff to use them.

"The Court does not find that the doctrine of res ipsa loquitur applies in this case but believes that all of the testimony supports the above findings of the Court without the use of the doctrine. The Court does not believe that the law requires the City of Aurora to be an insurer of the safety of those using the diving pool but believes that it must use due care to see to it that all of the arrangements of the swimming pool were in a normally safe condition before the public was permitted to use the diving pool."

The crux of the issue before us is whether there was sufficient evidence to sustain the finding of want of due care, i.e., was there negligence and proximate cause on the part of the defendant?

As we view the record the evidence falls short of establishing that plaintiff could not have broken the lens by striking it when she jumped from the side of the diving board as found by the court, nor is there evidence of any defect in the pool, such as a broken lens, when plaintiff jumped into the water. Nor do we find support in the record for the finding that defendant "did not use due care in seeing to it that the diving pool and its arrangements were in a reasonably safe condition before permitting the plaintiff to use them." In fact, the only evidence on all three points was to the contrary.

All plaintiff knew was that she had jumped from the board to try and reach the side of the pool and came up with a cut knee. Defendant, on the other hand, showed that the pool was constructed in a standard manner;

that it had inspected the lights the evening before and also on the day of the accident before it happened and none were broken; that it had vacuumed the pool whenever it needed it, and regularly each Sunday morning; that a hard blow could break one of the light lenses; and that swimmers were warned by a sign not to dive or jump from the side of a diving board. Controverted testimony involved other matters but none of the vital facts essential to a recovery were overcome by plaintiff. It follows that findings to the contrary were improper and are without effect.

The operator or owner of a swimming pool is not an insurer of his business guests' safety. *Home Market v. Newrock*, 111 Colo. 428, 142 P. (2d) 272 (1943). True, he owes them the duty of reasonable care; and he must be diligent in constructing and maintaining his premises in a reasonably safe condition for the purpose for which it is designed and used. See *Webb v. Thomas*, 133 Colo. 458, 296 P. (2d) 1037 (1956).

Plaintiffs' allegation of a defect in the pool, without proof thereof, creates no liability, for negligence is never presumed. *Home Market*, supra. The mere happening of the accident does not raise a presumption of negligence. *National Co. v. Holt*, 137 Colo. 208, 322 P. (2d) 1046 (1958). *Res ipsa loquitur*, urged by plaintiff, does not apply when as here it appears from the evidence that the accident is as reasonably attributable to causes other than that of alleged negligence of a defendant. *National Co.*, supra; *McGee v. Heim*, 146 Colo. 533, 362 P. (2d) 193 (1961).

Nor did plaintiff show that defendant should have been aware of a peril to divers by its installation of the light lens in question. In this connection we point out that the lens was not placed where one who used the diving board properly could strike it, hence the location of the light was not the proximate cause of her injury, the proximate cause being her failure to observe and obey the clear warning sign placed for the

safety of those using the diving boards. Compare: *Tucker v. Dixon*, 144 Colo. 79, 355 P. (2d) 79 (1960). No unreasonable risk is apparent from the placement of the particular pool light. It was a fixture visible to plaintiff when she jumped, and the hazard if in fact any existed was one which in the reasonable care for her own safety she was bound to notice. See *National Co.*, supra. The rule of conduct applicable here is that plaintiff, as well as defendant, shall act as an ordinarily prudent person would do under like circumstances. *Skorey Co. v. Canino*, 142 Colo. 411, 350 P. (2d) 1069 (1960).

In the *Home Market* case, supra, Newrock, the plaintiff, was injured when he walked up to a store building, placed his hand on the panel of a glass door as he had done many times before to open it and pushed, with the result that the glass broke and cut him. We believe the following comment by the court in reversing a judgment in favor of Newrock is pertinent here:

"The record reveals no evidence of negligence upon the part of defendant. Plaintiff, entering through a double door, put his hand on the plate glass center panel, and the glass broke. There was no proof of a defect in the glass or the door, or that a dangerous condition existed, known to defendant, or which, by the exercise of reasonable care, should have been known to it. The evidence discloses that the glass broke, nothing more.

\* \* \*

"Where, as here, the record discloses no negligence, the proprietor of a store is not responsible for injuries from swinging doors in common use, and properly installed and maintained."

The judgment is reversed with directions to dismiss the action.

Mr. Justice Hall and Mr. Justice Pringle concur.