No. 20548.

LEONARD J. HARVEY, ET AL., *v.* G. E. IRVIN.
(401 P.2d 266)

Decided March 8, 1965.     Rehearing denied May 10, 1965.

STINEMEYER & STINEMEYER, for plaintiffs in error.

ROBERT G. FREDRICKSON, for defendant in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

DR. IRVIN brought an action against James Harvey and the latter's son, Leonard Harvey, seeking cancellation of a certain lease and option to purchase agreement (hereinafter called the agreement) on the ground of fraud and deceit, and on the additional ground that the Harveys abused a confidential relationship then existing between the parties, to the end that the Harveys obtained an option to buy for $100,000 certain ranch properties worth $155,000. The Harveys by answer denied any wrongdoing on their part and alleged that the agreement as recorded in the office of the Clerk and Recorder of Fremont County truly and correctly represented the understanding and intention of the parties.

The matter was tried to the court, sitting without a jury, and the trial court found generally for Dr. Irvin

and against the Harveys and accordingly entered a decree canceling the agreement. In support of its judgment the trial court made rather elaborate findings and conclusions, the gist of which was that the agreement resulted from fraud, deceit and concealment on the part of Leonard Harvey and that the agreement as recorded did *not* represent the intention of the parties and was moreover grossly inequitable. By writ of error the Harveys now seek reversal of this judgment.

The Harveys urge that the several findings and conclusions of the trial court, as well as the judgment therein, are totally unsupported by any competent or credible evidence. Hence our only task is to determine whether there is evidence in the record to support the judgment of the trial court. If there be such supporting evidence, the judgment under well-established rules must be affirmed even though there may well be other evidence to the contrary, since the trial court — and not this Court — is the fact-finding body.

We have carefully examined the rather lengthy reporter's transcript and conclude that there is evidence, much evidence in fact, to support the judgment of the trial court. Admittedly, there is evidence to the contrary, but such only served to create a controverted issue of fact, all of which is only typical grist for the fact-finding mill.

Viewing the evidence in the light most favorable to the successful litigant in the trial court, as we must, there is evidence in the record to establish the following:

1. that Dr. Irvin shortly prior to December 1959 purchased two separate ranch properties situate in Fremont and Park counties, one lying north of the Arkansas River (which will hereinafter be referred to as the North Ranch) for $100,000 and the second lying south of the Arkansas River (which will hereinafter be referred to as the South Ranch) for $60,000;

2. that Dr. Irvin first met the two Harveys sometime

in December 1959, when there was discussion between the parties looking toward the purchase or leasing by the Harveys of one or both ranch properties;

3. that these discussions culminated in a written lease, dated December 21, 1959, whereby the Harveys leased the North Ranch from Dr. Irvin for three years at a yearly rental of $5,000;

4. that in January or February 1960 the Harveys also offered to lease the South Ranch for three years at a yearly rental of $3,000 but withdrew their offer before it was acted upon by Dr. Irvin;

5. that Dr. Irvin was 90 years of age and in time came to repose great confidence in Leonard Harvey, believing that a cattleman's "word was as good as his bond";

6. that the only contact between Dr. Irvin and James Harvey occurred in connection with the lease of the North Ranch in December 1959, and that all subsequent dealings were between Dr. Irvin, and Leonard Harvey acting for himself and his father;

7. that in May 1960 Leonard Harvey journeyed to Missouri, where Dr. Irvin was living at the time, and negotiations were entered into at that time between Dr. Irvin and Leonard Harvey looking towards the execution of a lease and option to purchase agreement on the North Ranch;

8. that on May 27, 1960, Dr. Irvin and Leonard Harvey canceled the existing lease on North Ranch and thereupon signed an agreement whereby the Harveys were to lease the same property for three years for an annual rental of $5,000 with the option to purchase the property for $100,000;

9. that the agreement signed by Dr. Irvin and Leonard Harvey on May 27, 1960, did not contain any description of the property covered by the agreement nor did it contain the purchase price agreed upon;

10. that thereafter Leonard Harvey inserted in the agreement as the purchase price the figure of $100,000,

which was in truth and in fact the amount actually agreed upon by the parties; but

11. that thereafter Leonard Harvey, acting contrary to the understanding of the parties, attached to the agreement a legal description covering *both* the North and South Ranches and caused the same to be recorded in the office of the Clerk and Recorder for Fremont County on March 22, 1961.

The foregoing is by no means a recital of *all* the evidence adduced by Dr. Irvin in support of his claim, but is deemed sufficient to demonstrate convincingly that there was evidence to support the trial court's finding of fraud and deception. There was, of course, evidence to the contrary. Both Harveys categorically denied any fraud or wrongdoing on their part. Leonard Harvey stated that it actually was the intention of both himself and Dr. Irvin that the agreement was to cover both the North and South Ranches. Under these circumstances with Dr. Irvin crying "fraud" and the Harveys flatly denying it, it is readily apparent that the credibility of the several parties to this controversy was of unusual importance. And determination of credibility is, of course, a matter exclusively reserved for the trier of the facts and is not the prerogative of this Court.

No more need be said to demonstrate that this, then, is but another instance of a sharply controverted issue of fact which under established rules is a matter to be resolved by the trier of the facts, namely, in this instance the trial court. It is axiomatic that where, as here, there is competent evidence to support the findings of a trial court, this Court is not permitted to indulge in any judicial "second guessing." See *Anderson-Randolph Co., Inc. v. Taylor*, 146 Colo. 170, 361 P.2d 142.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE SCHAUER not participating.