**No. C-877**

**Kiefer Concrete, Inc. v. Charles Hoffman and Patricia Hoffman**

(562 P.2d 745)

Decided March 21, 1977.                    Rehearing denied April 25, 1977.

Fischer and Wilmarth, Elroy Wilmarth, G. William Beardslee, for petitioner.

Hoffman, McDermott & Hoffman, Daniel S. Hoffman, Alan E. Richman; Hill and Hill, for respondents.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review *Hoffman v. Kiefer Concrete, Inc.*, 37 Colo. App. 138, 546 P.2d 1275 (1975). We reverse and remand with directions to affirm the judgment of the trial court.

On May 5, 1972, Charles Hoffman was hired by Poudre Pre-Mix, Inc. to bolt together sections of a cement silo. Several cranes were used in the operation, including one owned by Kiefer Concrete, Inc., a "sister" corporation of Poudre Pre-Mix.[1] An employee of Kiefer Concrete was operating its crane, which was equipped with a cement bucket. Hoffman, who was riding in the cement bucket, was raised by the Kiefer Concrete crane to various locations on the perimeter of the silo. He directed the operator of the crane by giving hand signals. As he was being moved from one position to another, the cable holding the bucket broke, and Hoffman fell approximately twenty feet to the ground. He suffered serious injuries and sued Kiefer Concrete, alleging negligence. His wife sued for loss of consortium.

At trial, the jury was instructed on the loaned servant issue and was given a special verdict form similar to that found in C.J.I. 9:33 (Supp. 1976). The verdict form asked, *inter alia*, whether the defendant was negligent and whether that negligence, if any, was a proximate cause of the plaintiff's injuries. The jury responded in the negative to both queries. The trial court, accordingly, entered judgment for the defendant.

In reversing, the court of appeals held (1) that the trial court erred in submitting the "loaned servant" issue to the jury, and (2) that the "only reasonable conclusion to be drawn from the evidence was that the cable

---

[1] Kiefer Concrete, Inc. and Poudre Pre-Mix, Inc. had identical shareholders and corporate officers, but different employees and places of business.

broke as a result of 'two-blocking'' or ''booming out,''[2] and that the trial court "should have determined as a matter of law that [the crane operator] was negligent and that his negligence was the proximate cause of Hoffman's damages." *Hoffman v. Kiefer Concrete, Inc., supra.*

## I.
### Jury Determination of the Loaned Servant Issue

A key issue in this case was whether at the time of the accident the crane operator, whose negligence allegedly caused injury to the plaintiff, was the servant of Kiefer Concrete or Poudre Pre-Mix.

■ A "loaned servant" under Colorado law is an employee who is loaned or hired out to another master (hereinafter employer) for some specific service or particular transaction and who is under the exclusive control of that employer. The employer under whose exclusive control the loaned employee operates may then be held vicariously liable for the acts of the employee under ordinary principles of *respondeat superior. See Bernardi v. Community Hospital Association,* 166 Colo. 280, 443 P.2d 708 (1968); *Chartier v. Winslow Crane Service Co.,* 142 Colo. 294, 350 P.2d 1044 (1960); *Jacobson v. Doan,* 136 Colo. 496, 319 P.2d 975 (1957); *Landis v. McGowan,* 114 Colo. 355, 165 P.2d 180 (1946); *Thayer v. Kirchoff,* 83 Colo. 480, 266 P. 225 (1928); *Colwell v. Oatman* , 32 Colo.App. 171, 510 P.2d 464 (1973); *see generally, J. Hynes, Agency and Partnership* ch. 4 (1974); *W. Seavey, Agency* § 86 (1964); *W. Sell, Agency* § 95 (1975); *Restatement (Second) of Agency* § 227 (1958).

■ The question of "loaned servant" status is generally an issue of fact for the jury. *See Chartier v. Winslow Crane Service Co., supra; Colwell v. Oatman, supra.* In departing from that standard, the court of appeals relied upon an analogy to *Chartier v. Winslow Crane Service Co., supra,* in which the facts were ostensibly "virtually indistinguishable" from those in the present case. The court of appeals held that the trial court should have entered a directed verdict that the operator was not a loaned servant to Poudre Pre-MIx. *Hoffman v. Kiefer Concrete, Inc., supra.* We find the analogy unconvincing. In *Chartier,* the court reversed a trial court for dismissing a case after a judgment for the plaintiff was entered by the jury. In *approving the jury determination,* the court held that the defendant was not exonerated from liability by reason of "loaning" its crane and operator to another employer. In *Chartier,* we said:
"The present case impresses us as one in which the defendant's responsibility continued. The evidence shows the crane in question to be very valuable ($50,000.00). It is shown that the operator is a highly trained specialist. The defendant has full responsibility for maintenance. The

---

[2] These terms refer to the practice of extending or retracting ("crowding") a telescoping crane without allowing an adequate amount of cable to be drawn out or brought back in along with the arm of the crane.

defendant is generally engaged in leasing this type of equipment complete with an operator and with fuel and maintenance furnished. The operator is directed to do particular work, but from the standpoint of the general contractor, it is the result that is important. In other words, he does not direct the operator with respect to the manner of operation. The operator knows full well the amount of force asserted by the instrumentality and in turn the general employer should be held responsible under the law for negligent movements of the machine which resulted in injuries to others. Consistent with our holding that the operator, Lewis, owed a duty to exercise a high degree of alertness so as to prevent a catastrophe such as that which occurred here, we hold that even though there was some division of control that this did not operate to shift responsibility of the defendant for the actions of the operator of the crane."[3]

The existence of some of these factors, *e.g.*, the value of the crane, that the crane operator was a specialist, and the fact that both the crane and operator were "loaned," is undisputed. However, there was a conflict in the evidence as to the amount of control retained by Kiefer Concrete. As noted above, the issue of "control" is the crucial factor in "loaned servant" analysis.[4] Other factors are but circumstantial indicia of this key element. In this case, the lender and lendee were closely related corporations, there were several cranes simultaneously in operation beside the one borrowed from Kiefer Concrete, and the person "in charge," plaintiff Hoffman, was an employee of Poudre Pre-Mix. He had been hired specifically to direct this aspect of the construction project. Finally, Hoffman clearly gave specific hand signals to the crane operator which were intended to direct the location, speed, and route of the bucket in which he was riding.

[3] This court in *Chartier v. Winslow Crane Service Co., supra,* relying upon the *Restatement of Torts* § 227 (1934) and other authorities, also considered the following factors to indicate the absence of a loaned servant relationship: an inference that, *in the absence of evidence to the contrary,* the original employment relationship continues; the original employer's right to substitute personnel; the short duration of the job to be performed; the lease of a valuable machine along with its operator; wages paid to the operator by the original employer.

[4] An increasing amount of commentary and judicial authority recommends dispensing with the concept of "control" as the index to liability in this context. One commentator suggests the following analysis:

"A crane company, for example, 'Has a better statistical background for estimating the likelihood of crane accidents, and thus can make more accurate insurance and pricing decisions.' The builder, on the other hand. . . 'is likely to isolate the cost of accidents involving cranes, for the purpose. either of demanding safer practices from the crane company or of considering safer and cheaper substitutes.' The crane company is thus the 'more efficient risk bearer.'"

*J. Hynes, Agency and Partnership* 96 n. 3 (1974), *quoting* Comment, *Borrowed Servants and the Theory of Enterprise Liability,* 76 Yale L.J. 807, 817 (1967). *See also Strait v. Hale Construction Co.,* 103 Cal. Rptr. 487, 26 Cal.App.3d 941 (1972) (rejecting "control" test in favor of enterprise liability analysis). *See generally,* Klemme, *The Enterprise Liability Theory of Torts,* 47 U. Colo. L. Rev. 153 (1976) Because of the empirical nature of the presumptions underlying such views, and the fact that the record in this case (as in most cases) is devoid of a basis for supporting such an assumption, we do not deem it prudent to adopt such a position on this issue.

In difficult cases, the issue of "control" essentially becomes one of the most accurate characterizations of a set of facts:

"The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, and it is not enough to show that there has been a change of masters."

*Chartier v. Winslow Crane Service Co., supra; quoting Standard Oil Co. v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). The cold record in this case provides no clear basis for such characterization. We cannot say that the giving of directions in this case constituted the giving of information rather than orders *as a matter of law.* Given the divergent conclusions possible from such a mixed set of facts, the issue was properly for the jury. There is, of course, substantial authority for the proposition that when an operator takes orders from a special master, he is a "loaned servant" under the control of that master. *See Brittingham v. American Dredging Co.,* 262 A.2d 255 (Del. Supr. 1970); *McFarland v. Dixie Machinery and Equipment Co.,* 348 Mo. 341, 153 S.W.2d 67 (1941); *W. Sell, Agency* § 95 at 88 n. 60 (1975).

## II.
### Negligence as a Matter of Law

The court of appeals concluded that because no rational hypothesis for the accident was presented, other than a separation of the cable caused by "two-blocking," the crane operator was negligent as a matter of law and that this negligence was the proximate cause of the plaintiff's injuries. These appellate findings are in direct contradiction to specific findings which were made by the jury. The rationale of the court of appeals, although persuasive, cannot be substituted for the explicit jury determination in this case.

■ It is axiomatic that in a jury trial the determination of facts, credibility of the witnesses, probative value and weight of the evidence are committed to the wisdom and discretion of the jury. *See, e.g., Judkins v. Carpenter,* 189 Colo. 95, 537 P.2d 737 (1975), *rev'g* 33 Colo.App. 360, 521 P.2d 1299 (1974); *Harvey v. Irvin,* 156 Colo. 391, 401 P.2d 266 (1965); *Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970); *People v. Lee Optical,* 168 Colo. 345, 452 P.2d 21 (1969).

■ Moreover, even the trial judge, who has the advantage of evaluating the evidence on a par with the jury, can direct a verdict in a negligence case only where "the evidence has such quality and weight as to point strongly and overwhelmingly to the fact that reasonable men could not arrive at a contrary verdict." *Safeway Stores v. Langdon,* 187 Colo.

425, 532 P.2d 337 (1975), *rev'g* 34 Colo.App. 29, 523 P.2d 997 (1974); *accord, Nettrour v. J. C. Penney Co.*, 146 Colo. 150, 360 P.2d 964 (1961).

Finally, the plaintiff has the burden of proving negligence by a preponderance of the evidence. *See Letts v. Iwig*, 153 Colo. 20, 384 P.2d 726 (1963) (plaintiff's burden not sustained by mere conjecture); *Yeager v. Lathrop*, 28 Colo.App. 44, 470 P.2d 609 (1970). After specific jury findings, and denial of the plaintiff's motion for a directed verdict based upon the above standard, it becomes especially difficult for an appellate court to reverse these determinations by looking at the cold transcript. It is the duty of the appellate court to carefully examine the record for evidence to support the judgment of the trial court. *See Adler v. Adler*, 167 Colo. 145, 445 P.2d 906 (1968).

In this case, the jury may well have concluded that the plaintiff simply did not prove his case by a preponderance of the evidence. No witness saw the crane operator perform his task in a negligent manner, and no witness saw the cable pull apart. All evidence of the cause of the accident was circumstantial. Contrary to the court of appeals' opinion, there was testimony in the record that the cable separation could have been the result of *either* two-blocking *or* a latent defect. As to the possibility of a latent cable defect suddenly appearing at the time of the accident, there was evidence that the cable had been subjected to stresses near the limit of its rated capacity just prior to the time of the accident. The jury was properly instructed that the happening of an accident does not necessitate a finding of negligence. *See Pence v. Chaudet*, 163 Colo. 104, 428 P.2d 705 (1967); *City of Aurora v. Weeks*, 152 Colo. 509, 384 P.2d 90 (1963); *National Construction Co. v. Holt*, 137 Colo. 208, 322 P.2d 1046 (1958). Under these circumstances, it cannot be said that reasonable men, instructed under correct legal principles, could not arrive at a contrary verdict. *See Safeway Stores v. Langdon, supra; see also Teodonno v. Bachman*, 158 Colo. 1, 404 P.2d 284 (1965).

Accordingly, we reverse the court of appeals and remand with directions to affirm the judgment of the trial court.

MR. CHIEF JUSTICE PRINGLE concurring in part and dissenting in part.

MR. JUSTICE CARRIGAN not participating.

MR. CHIEF JUSTICE PRINGLE concurring in part and dissenting in part:

I concur in the reversal of the court of appeals, but because of what I believe were numerous errors made by the trial court, I would grant an entire new trial.