**ANR PRODUCTION COMPANY, Plaintiff,**

v.

**WESTBURNE DRILLING, INC., Defendant.**

**Civ. A. No. 82–A–2194.**

United States District Court, D. Colorado.

Feb. 29, 1984.

Andrea I. Williams, Elizabeth H. Temkin, Davis, Graham & Stubbs, Denver, Colo., for plaintiff.

Richard L. Shearer, Richard L. Harring, Langdon J. Jorgensen, Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This diversity action arises from a contract between plaintiff ANR Production Company and defendant Westburne Drilling, Inc., to drill four oil and gas wells in North Dakota. Serious drill pipe problems interfered with the drilling of these wells and their related sidetracks. ANR seeks damages based upon defendant's alleged breach of contract, breach of warranty, negligence, and wanton and willful negligence. Plaintiff also seeks a judgment declaring invalid the contract's exculpatory provisions. Westburne denies all liability to ANR and counterclaims for unpaid materials, replacement costs of damaged pipe and interest, attorneys' fees, litigation costs and expenses.

Defendant now moves for partial summary judgment and asks this Court to dismiss as a matter of law, all but one claim in ANR's complaint. Both parties tendered exhaustive briefs on the motion and oral argument was heard on February 17, 1984. I am now prepared to rule.

## FACTUAL BACKGROUND

ANR, an oil and gas development company, is a Delaware corporation with its principal place of business in Texas. Defendant is a drilling contractor, incorporated under the laws of the State of Montana, with its principal place of business in Colorado. On October 23, 1980, ANR and Westburne entered into a written agreement for the drilling of oil and gas wells in Dunn County, North Dakota. The standardized language in the contract was taken from an International Association of Drilling Contractors (IADC) Daywork Drilling Contract form. In general, Westburne agreed to provide the drilling rig, the drill pipe and the personnel to conduct drilling activities at a set cost per day. Defendant was to perform its work in accordance with ANR's orders and directions, and with due diligence and care.

Four wells and three sidetracks were drilled under the contract: Askew 1–14, Askew 1–14A, Hansen 1–11 and Hansen 1–11A. Only one well, Askew 1–14, was completed to total depth. Although it was a dry hole, Westburne is not responsible for its failure to produce. Another well, Hansen 1–11A, was completed in a secondary objective about 3000 feet shallower than planned. Most importantly, the drilling of three of these wells—all but Askew 1–14A—was impeded by repeated drill pipe failures. ANR alleges that the drill pipe was fatigued before the contract was signed and holds Westburne accountable for the washouts, drilling interruptions and

costly fishing expeditions.[1] Plaintiff seeks damages based upon defendant's purported breach of contract, breach of warranty and negligence.

Westburne denies all liability and moves for partial summary judgment. Defendant contends that four of ANR's five claims for relief must be dismissed as a matter of law. First, Westburne argues that the exculpatory provisions in the contract are enforceable and compel summary judgment on ANR's declaratory relief claim (Fifth claim for relief). Defendant also urges that the exculpatory provisions bar plaintiff from asserting its negligence claim (Third claim for relief). ANR's Fourth claim for relief, based upon wanton and willful negligence, should be dismissed because any negligence on the part of the driller is solely attributable to plaintiff under the loaned servant doctrine. Finally, Westburne maintains that ANR's damages must be limited as a matter of law. Defendant insists that its contractual duty was fulfilled with the first satisfactory drill pipe inspection, and any alleged non-conforming pipe thereafter was not Westburne's responsibility. Additionally, Westburne asks this Court to deny ANR any recovery of "consequential damages", including the cost of drilling a replacement well, rig rental, fishing costs, additional wages, and materials purchased due to delay.

### I

▇▇▇ Under Rule 56, Fed.R.Civ.P., summary judgment may be entered when there is no genuine issue of material fact outstanding. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1383 (10th Cir.1980). Because it is a drastic remedy, the movant must establish entitlement to summary judgment beyond a reasonable doubt. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980). In addi-

tion, all pleadings, affidavits, and depositions must be construed liberally in favor of the party against whom the motion is made. *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33, 36 (10th Cir.1975). Thus, where different inferences can be drawn from conflicting affidavits or documents, the law is clear the summary judgment should not be granted. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1309 (10th Cir.1980).

In accordance with these principles, I grant defendant's motion for partial summary judgment on ANR's Third and Fifth claims for relief. I deny the motion with respect to claims One, Two and Four.

### II

Before addressing defendant's first argument for partial summary judgment, a preliminary choice-of-law question requires resolution. I must determine whether Colorado, Texas or North Dakota law governs the interpretation of the contract. The issue arises because the underlying agreement was negotiated and signed, in part, in Texas and Colorado, and was to be performed in North Dakota.

"In a diversity case a federal court must apply the conflict-of-law rules of the state in which the court sits." *Becker v. Marketing and Research Consultants, Inc.,* 526 F.Supp. 166, 169 (D.Colo.1981); *see Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 496–497, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Colorado has adopted the "most significant relationship" test for conflict-of-law questions in contract actions. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau,* 601 P.2d 1369, 1372–73 (Colo.1979). Under the *Restatement (Second)* approach, the objective "is to locate the state having the 'most significant relationship' to the particular issue." *Id.* at 1372. This is

---

**1.** Washouts—A hole in the drill pipe or a tool joint.

Fishing—Attempting to recover an object left in the wellbore during the drilling operations

that must be recovered before work can proceed.

determined according to the factors set forth in Section 188:

   a.  The place of contracting;

   b.  The place of negotiation of the contract;

   c.  The place of performance;

   d.  The location of the subject matter of the contract; and

   e.  The domicile, residence, nationality, place of incorporation, and place of business of the parties.

*Restatement (Second)* of Conflicts. Law governing in absence of effective choice by the parties.

Additionally, the principles contained in Section 6 of the *Restatement (Second)* are to be taken into account. *Wood Bros.,* *supra* at 1372. These factors include:

   a.  The needs of the interstate and international systems;

   b.  The relevant policies of the forum;

   c.  The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

   d.  The protection of justified expectations;

   e.  The basic policies underlying the particular field of law;

   f.  Certainty, predictability, and uniformity of result; and

   g.  Ease in the determination and application of the law to be applied.

■ Based upon the most significant relationship test, I conclude that Colorado law should govern the interpretation of the ANR/Westburne drilling contract. The agreement was negotiated and signed, in part, in Colorado. Westburne's principal place of business is in Colorado. The ease in determining and applying Colorado law is also a factor in reaching this conclusion. Finally, the policies of the forum state, to protect the parties' expectations, compel the application of Colorado law.

### III

With this preliminary issue resolved, I turn now to Westburne's argument that the exculpatory provisions in the contract are valid. Defendant argues that these liability clauses require dismissal of the negligence claim (Third claim for relief) and the request for declaratory relief (Fifth claim for relief). ANR disagrees. It contends that there are genuine issues of material fact which must be resolved before the effect of the exculpatory provisions can be determined.

The ANR/Westburne agreement expressly allocates the risks of loss and responsibilities between the parties. These exculpatory clauses, which are part of the standardized IADC Day Work Contract form, are contained in Section 14 of the contract. Under this Section, defendant (contractor) is responsible for injury to rig hands (14.8), contractor's surface equipment (14.1), and certain pollution and contamination (14.11). Plaintiff (operator), on the other hand, is generally liable for damage to all other equipment and to the wells (14.3, 14.4 and 14.5). One of the most hotly contested provisions is 14.13, which relieves Westburne from liability for damage caused by negligence. It provides:

> Except as otherwise expressly limited herein, it is the intent of the parties hereto that all indemnity obligations and/or liabilities assumed by such parties under terms of this contract, without limitation, paragraphs 14.1 through 14.12 hereof, be without limit and without regard to the cause or causes thereof (including any pre-existing conditions), the unseaworthiness of any vessel or vessels, strict liability, or the negligence of any party or parties, whether such negligence be sole, joint or concurrent, active or passive.
>
> Section 14.13 Indemnity Obligation, pg. 4 of Contract.

■ Determining whether exculpatory language in a contract is valid and enforceable is a question of law for the court to determine. *Jones v. Dressel,* 623 P.2d 370, 376 (Colo.1981). It may therefore be resolved in the context of summary judgment, even when there is an issue relating to the validity of the underlying liability agreement. *Id.*

Colorado adheres to the general rule that parties cannot contract away their own negligence. *Threadgill v. Peabody Coal Co.*, 34 Colo.App. 203, 526 P.2d 676, 679 (1974). There are, however, certain limited instances where courts will enforce such agreements. In *Jones v. Dressel, supra,* the Colorado Supreme Court enunciated a four factor test for determining whether an exculpatory agreement is valid. A court must consider: 1) the existence of a duty to the public; 2) the nature of the service performed; 3) whether the contract was fairly entered into; and 4) whether the intention of the parties is expressed in clear and unambiguous terms. 623 P.2d at 376. Although exculpatory agreements are strictly construed, they are enforceable where the parties are of equal bargaining power and the agreement is express and unequivocal. *Dressel, supra; Threadgill, supra.*

ANR maintains that in the context of the boom in oil and gas exploration in 1980 and the scarcity of rigs, there was a disparity in bargaining power between plaintiff and defendant. As a result of this inequity, plaintiff argues that it did not knowingly and voluntarily contract for these exculpatory provisions.

There is little question that the unusual market conditions in the domestic oil and gas industry in 1980 played some role in the contract negotiations between ANR and Westburne. For example, ANR's executives may have been reluctant to suggest a footage contract, as opposed to a day-work contract, because it was a drilling contractor's market. But these external conditions did not disturb the parties' relative parity in bargaining strength. Hence, the mere fact that it was a seller's market did not render unfair an otherwise reasonable, arms-length agreement.

This conclusion is supported by several important facts. First, there is no dispute that ANR and Westburne are both large, sophisticated and experienced corporations. This is not a case of overreaching or unequal bargaining positions. ANR had every opportunity to review, consider and ne-gotiate the terms of the proposed agreement. The contract draft was initially examined in plaintiff's Denver office. ANR then channeled the document to its Houston office, where its in-house legal department and other executives reviewed and approved the contract. The deposition excerpts reveal that plaintiff altered some terms of the contract (*see e.g.,* addendum to contract), but never requested changes nor expressed concern about the exculpatory provisions. Thus, it can hardly be said that ANR unknowingly or involuntarily agreed to these liability provisions. I therefore find that ANR and Westburne were in equal bargaining positions and negotiated the terms of the drilling contract in a commercially reasonable manner and setting.

ANR also challenges the validity of the exculpatory language based upon its lack of clarity in description and meaning. It is ANR's position that Section 14 is not only vague, but inconsistent with other contract provisions; the liability clauses must therefore give way to the more specific contract obligations and duties.

I find that the ANR/Westburne agreement expresses the parties' intentions in clear and unambiguous language. *Jones v. Dressel, supra* at 378. It delineates specific responsibilities for each parties' equipment, the hole, underground damage, inspection of materials, wild wells, injury to rig operators and consequential damages. Most importantly, it gives each party notice that there are special, detailed provisions governing liability. Admittedly, Section 14 is part of the standardized form and not set-off in typewritten print. This fact would be problematic were plaintiff a small, inexperienced developer. But ANR and Westburne are sophisticated companies, intimately acquainted with industry contract forms. Finally, I conclude that Section 14 and the general contract duties are not in conflict. The exculpatory clauses only limit the remedies available upon the occurrence of certain specified events; they do not abrogate the underlying duty of care.

■ Because ANR and Westburne are of equal bargaining power and the agreement is express and unequivocal, I hold that the exculpatory clauses are valid and enforceable. Accordingly, I grant defendant Westburne's motion for partial summary judgment on plaintiff's request for declaratory relief (Fifth claim for relief). I also grant the motion on the negligence claim (Third claim for relief), but only with respect to negligence barred by the exculpatory clauses. Thus, any purported negligence that is not covered by the liability provisions is still actionable.

## IV

ANR's complaint alleges two types of negligence: ordinary negligence (Third claim for relief) and willful and wanton negligence (Fourth claim for relief). Colorado law differentiates conduct on the basis of negligent or willful and wanton behavior. "The latter is defined as a mental state of the actor consonant with purpose, intent, and voluntary choice." *Shoemaker v. Mountain States Tel. & Tel. Co.*, 38 Colo.App. 321, 559 P.2d 721, 724 (1976). This distinction is also significant in the context of exculpatory clauses. Whereas courts are willing to enforce certain exculpatory agreements for ordinary negligence, "in no event will such an agreement provide a shield against a claim for willful and wanton negligence." *Jones v. Dressel, supra* at 376.

In its motion for partial summary judgment, Westburne contends that the loaned servant doctrine bars as a matter of law, *any* negligence claim arising out of the "wrong lever incident". That incident involved a driller who purportedly engaged the wrong lever and caused the fishing tools to fall down the hole on top of the lost drill pipe. Westburne reasons that ANR's direct control of the driller, and control vis-a-vis its special fisherman, renders ANR liable under a loaned servant theory.

Under Colorado law, a loaned servant "is an employee who is loaned or hired out to another master (employer) for some specific service or particular transaction and who

is under the exclusive control of that employer. The employer under whose exclusive control of that loaned employee operates may then be held vicariously liable for the acts of the employee...." *Kiefer Concrete v. Hoffman*, 193 Colo. 15, 562 P.2d 745, 746 (1977); *see Chartier Inc. v. Winslow Crane Service Co.*, 142 Colo. 294, 350 P.2d 1044 (1960). Although the doctrine is typically asserted in personal injury cases, it also applies to tortious conduct resulting in property damage. In both situations, the critical issue is who bears the ultimate responsibility for the wrongful conduct. That depends upon who had the primary right of control over the individual when the act was performed. *Shenker v. Baltimore & Ohio RR Co.*, 374 U.S. 1, 6, 83 S.Ct. 1667, 1671, 10 L.Ed.2d 709 (1963); *Kiefer, supra; Chartier, supra.* But the question of control is an issue of fact for the jury to decide. *Kiefer, supra* 562 P.2d at 747.

■ In the present case, the issue of control of the driller during the fishing operations is hotly contested. The parties characterize Westburne's role in those operations in significantly different light based upon conflicting testimony. Because the matter of control is an outstanding question of material fact, I deny Westburne's motion barring any negligence claim involving the "wrong lever incident". Thus, ANR's entire Fourth claim for relief, based upon willful and wanton negligence, survives this partial summary judgment motion. In addition, any ordinary negligence claim arising out of the "wrong lever incident" that is not otherwise barred by the exculpatory provisions, survives this motion.

## V

Westburne's last argument concerns damages. It asks this court to limit ANR's damages as a matter of law with respect to the breach of contract and warranty claims (First and Second claims for relief, respectively). Westburne insists that its contractual duty was fulfilled with the first satisfactory pipe inspection, and any alleged

non-conforming pipe thereafter was not defendant's responsibility. Westburne additionally maintains that under the express terms of the agreement, ANR is not entitled to recover any consequential damages. It goes on to define consequential damages as including the cost of drilling a replacement well, rig rental, fishing costs, additional wages paid and materials purchased due to delay.

I am not persuaded that satisfaction of the technical pipe standard requirement (RP7G) at the March 13, 1981, inspection fulfilled Westburne's contractual duty to provide suitable pipe. To be sure, a drilling agreement implicitly requires equipment and machinery capable of drilling wells. Anything less than that is inadequate and defeats the subject of the contract. The inspection standard set forth in the contract, therefore, does not displace this fundamental obligation to provide usable pipe. Nor does the standard (RP7G) cause this duty to expire after the first inspection. A driller's duty to provide suitable equipment extends throughout the drilling term.

In the present case, there is a question of material fact outstanding as to whether Westburne provided suitable drill pipe. The conflicting evidence regarding the quality and capabilities of the pipe at various stages in the drilling operation further obfuscates this factual question. Accordingly, I refuse to limit ANR's potential damages to the period preceding the first satisfactory pipe inspection.

I turn now to Westburne's final request: that ANR be denied any consequential damages. The parties agree that the drilling contract expressly bars recovery of consequential damages. But they differ in their respective definition and characterization of consequential damages. I do not find it appropriate to resolve this question at this juncture because it is more than a simple dispute about definitions. The consequential damage issue raises important factual questions about each damage claim. Consequently, it renders summary judgment inappropriate. I therefore deny Westburne's motion with respect to consequential damages. Accordingly, it is

ORDERED that Westburne's motion for partial summary judgment be granted with respect to ANR's Fifth claim for relief.

ORDERED that Westburne's motion for partial summary judgment be granted on ANR's Third claim for relief, to the extent that any exculpatory clause bars a negligence claim.

ORDERED that Westburne's motion for partial summary judgment be denied with respect to ANR's First, Second and Fourth claims for relief.