John T. BAIN and Patricia Mayhew Bain, Plaintiffs–Appellants,

and

New Hampshire Insurance Co., A New Hampshire corporation, Intervenor–Plaintiff–Appellant,

v.

The TOWN OF AVON, Robert Reed a/k/a Bob Reed, Defendants–Appellees.

No. 90CA438.

Colorado Court of Appeals, Div. V.

May 9, 1991.

Rehearing Denied June 20, 1991.

Certiorari Denied Nov. 25, 1991.

Berenbaum & Weinshienk, P.C., Peter Bornstein and Kenneth S. Kramer, Denver, for plaintiffs-appellants.

Makris, Hunsaker & Melonakis, P.C., Anthony Melonakis, Denver, for intervenor-plaintiff-appellant.

Halaby & McCrea, Theodore S. Halaby and James B. Buck and Law Offices of Fred C. Kuhlwilm, Fred C. Kuhlwilm and Daniel J. Torpy, Denver, for defendants-appellees.

Opinion by Judge JONES.

Plaintiffs, John T. Bain (Bain) and Patricia Mayhew Bain, and Intervenor–Plaintiff, New Hampshire Insurance Company (New Hampshire), appeal from the summary judgment entered by the trial court against them and in favor of defendants, the Town of Avon, Robert Reed, and William Doyle. We affirm in part, reverse in part, and remand with directions.

Bain was a plumber employed by Beaver Creek Plumbing & Heating, Inc. New Hampshire provided workers' compensation insurance coverage for Beaver Creek Plumbing & Heating, Inc.

Doyle was a general partner in Doyle & Associates, a partnership which owned and leased out space in a commercial warehouse in the Town of Avon. At all times relevant hereto, the Town was leasing two units in the warehouse from Doyle.

In the early 1980's, the sewer lines at the warehouse began to backup periodically because of oil flushed into the sewer system by the Town. As the result of a dispute over who should pay to correct the problem, Doyle and the Town agreed that the Town would furnish a backhoe and an operator to Doyle who would attempt to solve the problem by installing a sand trap on the sewer line. Doyle hired Bain to assist with the plumbing work for the project. Reed, an employee of the Town, was taken by his supervisor to the warehouse to operate the backhoe and was told to follow Doyle's orders.

On October 5, 1987, Reed was operating the backhoe and was working under the direction of Doyle and Bain. After digging a trench to expose the sewer line, Reed moved the backhoe away from the trench to retrieve the sand trap that was to be installed on the line. Bain and Doyle remained in the trench using shovels to clear dirt from around the line. At that moment, a portion of the side of the trench collapsed burying Bain. He suffered severe injuries from being buried and from the efforts to rescue him.

In this subsequent civil action, Bain sought damages against the Town, Reed, and Doyle. The first and second claims for

relief alleged negligence against the Town. Negligence against Reed was alleged in the fifth claim for relief. The claims against Doyle are not raised in this appeal. New Hampshire claimed subrogation rights based upon its payment of workers' compensation benefits to Bain as a result of the accident. In the seventh claim for relief Mrs. Bain sought damages for loss of consortium deriving from her husband's injuries. And in the eighth claim for relief, plaintiffs requested punitive damages against all defendants.

After a hearing on the motions for summary judgment of the respective defendants, the district court granted summary judgment and dismissed the first and second claims for relief against the Town, the fifth claim against Reed, and the seventh claim, by Mrs. Bain, as well as the eighth claim for punitive damages.

The remaining claims against Doyle were dismissed upon the entry of summary judgment in his favor and against Bain. That judgment is the subject of a separate appeal before this court which was resolved in *Bain v. Doyle,* 807 P.2d 1225 (Colo.App. 1990).

## I.

■ Plaintiffs first contend that the trial court erred in concluding that the backhoe operated by Reed did not constitute a "motor vehicle" for purposes of § 24–10–106(1)(a), C.R.S. (1988 Repl.Vol. 10A). We disagree.

Section 24–10–106(1)(a) is part of the Colorado Governmental Immunity Act (Act) and provides, *inter alia,* that sovereign immunity is waived by a public entity in an action for injuries resulting from "[t]he operation of a motor vehicle, owned or leased by such public entity [or] by a public employee while in the course of his employment...."

The term "motor vehicle" is not defined for purposes of the Act. *See* § 24–10–103, C.R.S. (1988 Repl.Vol. 10A). However, the term is defined for purposes of the "Uniform Motor Vehicle Law" as:

"[A]ny self-propelled vehicle which is designed primarily for travel on the public highways and which is generally and commonly used to transport persons and property over the public highways...." Section 42–1–102(46), C.R.S. (1984 Repl. Vol. 17).

The record reveals that the backhoe at issue here does not possess the requisite characteristics to bring it under the definition of a "motor vehicle". Indeed, in a sworn affidavit, Reed stated that: "[T]here is no area available on the backhoe for transporting passengers," and that: "There is no cargo area on the backhoe, and the backhoe has not been used to haul cargo back and forth to projects." Reed also stated that the maximum speed at which the backhoe could be safely operated was 15 mph.

We conclude that the backhoe here is more in the nature of "mobile machinery" or "self-propelled construction equipment." Such machinery and equipment has been defined in § 42–1–102(43), C.R.S. (1984 Repl.Vol. 17) as follows:

" 'Mobile machinery' or 'self-propelled construction equipment' means those vehicles, self-propelled or otherwise, *which are not designed primarily for the transportation of persons or cargo over the public highways,* and those motor vehicles which may have originally been designed for the transportation of persons or cargo over the public highways, and those motor vehicles which may have originally been designed for the transportation of persons or cargo but which have been redesigned or modified by the mounting thereon of special equipment or machinery, and *which may be only incidentally operated or moved over the public highways.* This definition includes but is not limited to wheeled vehicles commonly used in the construction, maintenance, and repair of roadways, the drilling or wells, *and the digging of ditches.*" (emphasis added)

We conclude that the self-propelling quality of such machinery, including the backhoe at issue here, is not primarily for the purpose of transporting persons or

property on the highways. Rather, the primary purpose of this quality is to allow the machinery itself to be transported to a job site, at which point its essential uses and characteristics are utilized.

Our conclusion here is buttressed by the fact that, in enacting § 24–10–106(1)(a), the apparent intent of the General Assembly was to waive the defense of sovereign immunity for injuries "arising from *automobile accidents* caused by the negligent operation of government owned motor vehicles...." Colorado Legislative Council, *Report to the Colorado General Assembly: Governmental Liability in Colorado* (1968), (emphasis added). These comments from the legislative history of the Act indicate that the General Assembly intended that the defense of sovereign immunity not be available to a public entity only when motor vehicles are involved which are meant to convey persons and cargo.

Thus, we conclude that the trial court correctly determined that the backhoe is not a "motor vehicle" for purposes of § 24–10–106(1)(a). Accordingly, it properly dismissed plaintiffs' first claim for relief against the Town as being barred by the immunity provisions of the Act.

## II.

██ Plaintiffs next assert that Reed and the Town did not raise, in their answer, the affirmative defense of "statutory employee" immunity under the Workers' Compensation Act. Therefore, plaintiffs contend that Reed and the Town did not preserve any such affirmative defense and that the trial court erred in considering the merits of such defense. We disagree.

Even if a party fails to raise an affirmative defense in its answer, by including the affirmative defense in its motion for summary judgment, the defense is deemed to be incorporated in the responsive pleading for purposes of technical compliance with C.R.C.P. 8(c). *Cox v. Pearl Investment Co.*, 168 Colo. 67, 450 P.2d 60 (1969); *Slabey v. Colorado Real Estate Commission*, 762 P.2d 734 (Colo.App.1988).

Here, Reed and the Town raised statutory employee immunity in their motion for summary judgment. Thus, that affirmative defense was preserved in technical compliance with C.R.C.P. 8(c), and accordingly, the trial court did not err in addressing the merits of that issue.

## III.

██ Plaintiffs next contend that the trial court erred in concluding, as a matter of law, that Reed was a "loaned servant" and that he was a "fellow employee" of Doyle at the time of the accident. Plaintiffs argue that if a trier of fact were given the opportunity to, and could determine that Reed was neither a fellow employee nor a loaned servant, their common law claims, generally, would not be barred and their fifth claim for relief against Reed personally could survive even if it could not support a related *respondeat superior* claim against the Town. We agree.

In its findings and conclusions, the trial court stated as follows:

"2. At the time of the accident, Robert Reed was acting within the scope of his employment, but under the control of ... [Doyle and/or Bain], and therefore, he was a loaned servant and a fellow employee of the plaintiff [Bain]."

Nothing more than this is set forth as to the issues of "loaned servant" or "fellow employee."

## A.

██ A "loaned servant" is an employee who is loaned or hired out to another master for some specific service or particular transaction and who is under the exclusive control of that master. *Kiefer Concrete, Inc. v. Hoffman*, 193 Colo. 15, 562 P.2d 745 (1977).

██ The issue of "control" is the crucial factor in "loaned servant" analysis. And, the question of "loaned servant" status is generally an issue of fact for the jury. *Kiefer Concrete, Inc. v. Hoffman, supra; Chartier v. Winslow Crane Service Co.*, 142 Colo. 294, 350 P.2d 1044 (1960).

In *Chartier*, the court considered the following factors to indicate the *absence* of a loaned servant relationship:

"1) an inference that, in the absence of evidence to the contrary, the original employment relationship continues; 2) the original employer's right to substitute personnel; 3) the short duration of the job to be performed; 4) the lease of a valuable machine along with its operator; 5) wages paid to the operator by the original employer." *Kiefer Concrete, Inc. v. Hoffman, supra.*

■ Here, the record does not reflect that the trial court considered the *Chartier* factors. And, while the deposition testimony indicates that Reed did receive instructions from Doyle and Bain regarding when and where to dig, we conclude that this testimony alone is insufficient to establish a "loaned servant" status as a matter of law.

Thus, we conclude that genuine issues remain as to the nature and extent of control exercised by Doyle and Bain over Reed, and as to the extent of control retained by the Town over Reed. *See Kiefer Concrete, Inc. v. Hoffman, supra.*

### B.

For purposes of the Workers' Compensation Act, "employee" in the private sector means "[e]very person in the service of any person, association of persons, firm, or private corporation ... *under any contract of hire, express or implied ...*." Section 8–40–202(1)(b), C.R.S. (1990 Cum.Supp.) (emphasis added); *see* § 8–41–106(1)(b), C.R.S. (1986 Repl.Vol. 3B).

We conclude that genuine issues of fact exist regarding whether Reed was under a "contract of hire" with Doyle during the period he operated the backhoe. Indeed, from the limited facts before us in the record, it is unclear whether Reed was working for Doyle and Beaver Creek Plumbing & Heating, Inc., thus, making him a "fellow employee" of Bain, or whether he was still acting within the scope of his employment with the Town and advancing its interests, in which case he could not be a "fellow employee" of Bain.

Summary judgment is proper only upon a showing that no genuine issue of material fact exists and that judgment should be entered as a matter of law. C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). Because genuine issues of material fact exist as to the issues of "loaned servant" and "fellow employee," the trial court erred in granting summary judgment as to those issues.

The summary judgment is affirmed as to the first, second, and seventh claims for relief as to the Town, and is reversed as to the fifth claim, and the cause is remanded for a new trial as to the issues raised in the fifth claim for relief. Survival of the seventh and eighth claims for relief as to Reed will depend on the determinations of the trier of fact as to the fifth claim for relief.

NEY and DAVIDSON, JJ., concur.