Ronald G. MORPHEW, Plaintiff–Appellant,

v.

RIDGE CRANE SERVICE, INC., d/b/a Ridge Erection Company, and John Koplitz, Defendants–Appellees.

No. 93CA2094.

Colorado Court of Appeals, Div. II.

Feb. 9, 1995.

Rehearing Denied March 16, 1995.

Certiorari Denied Sept. 5, 1995.

Jack Kintzele, Denver, for plaintiff-appellant.

Law Offices of Robbins & Yarbrough, Kent L. Yarbrough, Denver, for defendants-appellees.

Opinion by Judge BRIGGS.

In this negligence action, plaintiff, Ronald G. Morphew, appeals the summary judgment entered in favor of defendants, Ridge Crane Service, Inc., d/b/a Ridge Erection Company (Ridge Crane), and John Koplitz, the crane outrigger operator (operator). We affirm.

Ridge Crane is in the business of leasing cranes and qualified crews. Plaintiff's employer, Midwest, leased equipment and a crew from Ridge Crane pursuant to a written lease agreement.

Plaintiff was injured when the operator retracted one of the crane's outrigger beams. Plaintiff filed a tort claim against the operator and, under the doctrine of respondeat superior, against Ridge Crane.

Defendants moved for summary judgment. They asserted that the operator was immune from suit as a loaned co-employee of Midwest and that plaintiff's negligence claims against both defendants were therefore barred by the exclusive remedy provisions of the Workers' Compensation Act, §§ 8–41–102, 8–41–203(1), and 8–41–401(1) C.R.S. (1994 Cum. Supp.).

The trial court did not accept defendants' argument that the operator was a co-employee immune from tort liability because Midwest was his statutory employer under § 8–41–203(1). However, the court granted defendants' motion for summary judgment because it determined the undisputed evidence established that plaintiff and the operator were co-employees under the "loaned employee" doctrine.

Plaintiff contends the trial court erroneously concluded that the operator was a loaned employee as a matter of law. In the circumstances presented here, we disagree.

Summary judgment is appropriate if there is no disputed issue of material fact and the movant is entitled to judgment as a matter of law. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987). A plaintiff opposing a defendant's summary judgment motion must counter the defendant's statements of fact by affidavit or other evidence which sets forth specific facts demonstrating the existence a triable issue of fact. C.R.C.P. 56(e); *Artes–Roy v. City of Aspen,* 856 P.2d 823 (Colo.1993). A movant's affirmative showing of specific facts probative of a right to judgment, uncontradicted by any counter-showing, presents a trial court with no alternative but to conclude that no genuine issue of material fact exists. *Civil Service Commission v. Pinder,* 812 P.2d 645 (Colo.1991).

A loaned employee is an employee loaned or hired out to another employer for some specific service or particular transaction and under the exclusive control of that special employer. *Bain v. Town of Avon,* 820 P.2d 1133 (Colo.App.1991); *see generally* 1B A. Larson, *Workmen's Compensation Law* § 48.30 (1993).

A loaned employee is considered a co-employee of the special employer's employees. Ridge Crane does not contest, and we agree, that this results in immunity from tort liability for both the loaned employee and the general employer, if the conditions of loaned employment are met. *See Kandt v. Evans,* 645 P.2d 1300 (Colo.1982); *Bain v. Town of Avon, supra; see also* 2A A. Larson, *Workmen's Compensation Law, supra,* § 72.24(d).

Courts have traditionally considered several criteria to be relevant in the determination whether a loaned employment relationship exists. These include: (1) whether the borrowing employer has the right to control the employee's conduct; (2) whether the employee is performing the employer's work; (3) whether there was an agreement between the original and borrowing employer; (4) whether the employee had acquiesced in the arrangement; (5) whether the borrowing employer had the right to terminate the employee; (6) whether the borrowing employer furnished the tools and place for performance; (7) whether the new employment was to be for a considerable length of time; (8) whether the borrowing employer had the obligation to pay the employee; and (9) whether the original employer terminated its relationship with the employee. *See Evans v. Webster,* 832 P.2d 951 (Colo.App.1991).

Our supreme court has identified additional criteria to be considered in the context of leased heavy equipment. These include: (1) whether the general employer could properly have substituted another servant at any time; (2) whether the duration of the work was short; (3) whether the machine operator had the skill of a specialist; (4) whether the general employer had rented a valuable machine and the employee to operate it; and (5) whether the general employer furnished fuel and maintenance. However, these are considered circumstantial indicia of the right to control, which remains the crucial factor. *Kiefer Concrete, Inc. v. Hoffman,* 193 Colo. 15, 562 P.2d 745 (1977); *Chartier v. Winslow Crane Service Co.,* 142 Colo. 294, 350 P.2d 1044 (1960).

Here, the lease agreement between Midwest and Ridge Crane provided that Midwest had exclusive jurisdiction, supervision, and control over the equipment and Ridge Crane's employees. According to the uncontroverted affidavit of the President of Ridge Crane, Midwest also retained the right to terminate the lease at any time and hire another company to complete the job.

In addition, the operator testified in his deposition that the Ridge Crane employees were working under the direction of Midwest

employees on the day of the accident. Plaintiff in his deposition confirmed that, at the time of the accident, the operator was following hand signals being given by a Midwest employee, who had the responsibility to "take charge" and tell the workers what he wanted done. The trial court also noted that the operator was aware that Ridge Crane was in the business of contracting out the services of its employees and equipment for work at the job site of the lessee. Hence, the undisputed facts established that the operator had acquiesced in working under the exclusive control of Midwest. *See Evans v. Webster, supra* (consent of employee of critical importance); 1B A. Larson, *Workmen's Compensation Law, supra,* § 48.12 at 8–440 (showing of "deliberate and informed consent" of loaned employee required to bar common-law suit); § 8–41–303, C.R.S. (1994 Cum.Supp.) (new contract of hire may be express or implied); *cf. Continental Sales Corp. v. Stookesberry,* 170 Colo. 16, 459 P.2d 566 (1969).

Plaintiff argues that summary judgment was nevertheless inappropriate because the evidence showed that: (1) the operator maneuvered the crane's outriggers without instruction and had the right to refuse to operate them in any manner which in his judgment would be dangerous and not within the general safety practices of the crane industry; (2) the operator was paid by Ridge Crane; and (3) Midwest could not terminate the services of the operator without terminating the lease. We conclude this evidence did not preclude summary judgment.

█ The element of control necessary to establish a borrowed employment relationship "need not extend to directing the technical details of a skilled employee's activity. . . . What is essential . . . is the right to control the time and place of services, the person for whom rendered, and the degree and amount of services." 1B A. Larson, *supra,* § 48.30 at 8–544 to 8–545. Further, "the element of who pays shrinks into comparative insignificance" in borrowed-employee cases. 1B A. Larson, *supra,* § 48.30 at 8–546. Finally, we conclude that, even if Midwest could not terminate the operator without terminating the lease, the right to terminate the lease if

dissatisfied with the services being provided, combined with the other uncontroverted evidence, was sufficient to establish the necessary control as a matter of law.

In *Chartier v. Winslow Crane Service Co., supra,* as here, employees of the contractor directed the equipment operator to the place where the work was to be performed, gave instructions regarding the operator's mission, and gave hand signals to the equipment operator during the equipment's operation. The *Chartier* court concluded this was not sufficient to establish the requisite control as a matter of law. *See also Kiefer Concrete, Inc. v. Hoffman, supra.*

However, here, unlike in *Chartier,* Midwest had the right of exclusive control over the work by express agreement. Even if the "circumstantial indicia" of control referenced in *Kiefer* and *Chartier* remained relevant considerations in such circumstances, plaintiff failed to present evidence pertaining to those factors that would counter defendants' evidence establishing exclusive control in Midwest.

The supreme court has determined that the concept of control is the appropriate "index to liability" in the borrowed employee context. *Kiefer Concrete, Inc. v. Hoffman, supra,* (fn. 4). Here, the uncontroverted evidence established that Midwest had the exclusive right to control the work of the operator pursuant to the lease agreement, that at the time of the accident the operator was performing work for Midwest, that Midwest was controlling the work, and that the operator acquiesced to this special employment relationship. Accordingly, we agree with the trial court's conclusion that the conditions of loaned employment were met and that summary judgment was appropriate.

Judgment affirmed.

CRISWELL and ROY, JJ., concur.